**Jose Luis VAZQUEZ MORALES,
et al., Plaintiff**

v.

**ESTADO LIBRE ASOCIADO
DE PUERTO RICO, et
al., Defendant.**

**Civil No. 96–2308 (JP).**

United States District Court,
D. Puerto Rico.

June 4, 1997.

43

Ricardo Ruiz Diaz, Carolina, PR, for Plaintiff.

Miriam Soto Contreras, Dept. of Justice, Federal Litigation Division, San Juan, PR, Iris M. Muniz Rodriguez, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

Before the Court are the motions to dismiss of defendants University of Puerto Rico and Commonwealth of Puerto Rico (**docket Nos. 3 and 12**) and plaintiffs' oppositions thereto (**docket Nos. 14 and 15**).

## I. BACKGROUND

Plaintiffs brought this action alleging federal question jurisdiction based on the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.A. § 1395dd (West 1992). EMTALA requires the emergency rooms of Medicare-participating hospitals to provide appropriate medical screening and prohibits transfers to other medical facilities until patients are stabilized.

Plaintiffs claim that on October 27, 1994, Mr. Jóse Luis Vázquez Morales was injured in an automobile accident in Guánica and was taken by ambulance to the emergency department of Dr. Tito Mattei Semidey Hospital, also known as the Yauco Area Hospital, in Yauco, Puerto Rico. The provisional medical diagnosis was thorax trauma, bilateral pneumothorax and multiple rib fractures. Dr. Ramón, the emergency ward physician, ordered a transfer to the Ponce District Hospital (Ponce Medical Center). The ambulance carrying Mr. Vázquez Morales to the Ponce District Hospital encountered mechanical difficulties and had to be stopped by striking a road barrier. Plaintiff allegedly arrived at the Ponce District Hospital in cardio-respiratory arrest and was submitted to cardio-pulmonary resuscitation, intubation, and mechanical ventilation. Thereafter, plaintiffs claim he underwent surgery for spleen and right kidney removal.

Nearly a year later, on October 18, 1995, Mr. Vázquez Morales was admitted to the Piedras Medical Center, University Hospital, for a spine operation. During this operation, allegedly a gauze was mistakenly left in Mr. Vázquez Morales' hip area, causing excruciating pain and severe tissue infection. Mr. Vázquez Morales underwent surgery again on October 31, 1995 (presumably to remove the gauze). This incident necessitated the administration of massive doses of antibiotics, which in turn adversely affected Mr. Vázquez Morales' remaining kidney.

Plaintiff sues defendant Commonwealth of Puerto Rico, owner of the Yauco Area Hospital, under EMTALA, alleging that the Commonwealth violated the requirements of EMTALA by failing to implement an appropriate medical screening examination and by failing to stabilize Mr. Vázquez Morales before transferring him to another hospital. Plaintiffs invoke the Court's supplemental jurisdiction over their claims against defendant University of Puerto Rico under Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31 5141 (1990), for leaving the gauze in Mr. Vázquez Morales' hip during the 1995 operation.

Defendant University of Puerto Rico moved the Court to dismiss plaintiffs' claims against it, arguing that EMTALA imposes only a limited duty on hospital emergency rooms and is not a substitute for state-law medical malpractice claims. In any case, argues University of Puerto Rico, it is shielded from liability by the Eleventh Amendment. Defendant Commonwealth of Puerto Rico also moved to dismiss, asserting Eleventh Amendment immunity and also arguing that the EMTALA cause of action is time-barred and supplemental jurisdiction is inappropriate since the allegations relating to the gauze incident in no way relate to the EMTALA claim. Plaintiffs do not address defendant University of Puerto Rico's Eleventh Amendment arguments head-on, other than to concede that the University is an agency or instrumentality of the Commonwealth of Puerto Rico. Instead they assert that their claims against this defendant are based strictly on Article 1802 of the Civil Code and therefore supplemental jurisdiction is appropriate. With respect to defendant Commonwealth of Puerto Rico's motion, plaintiffs assert that their complaint is not time-barred and rely on *Helton v. Phelps County Regional Medical Center*, 817 F.Supp. 789 (E.D.Mo. 1993), for the proposition that EMTALA preempts the Commonwealth's immunity.

## II. APPLICABLE LAW AND ANALYSIS

The Eleventh Amendment bars the federal courts from entertaining claims for

money damages against the states, including Puerto Rico. *Ramírez v. Puerto Rico Fire Serv.*, 715 F.2d 694 (1st Cir.1983). Its application to state agencies and institutions depends upon whether the entity is to be treated as an arm or alter ego of the State, thereby partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). The United States Supreme Court has made it clear that "Congress may abrogate the states' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985).

Section 1395dd(d)(2)(A) of EMTALA describes the remedies available to private parties for violations of the Act. It provides:

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

A review of Section 1395dd(d)(2)(A) indicates that by enacting EMTALA, Congress intended to create a federal cause of action that draws on substantive state law in a manner similar to the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671–2680 (West 1994), which allows federal court jurisdiction over tort claims against the United States government that are defined by reference to state law. Furthermore, EMTALA's preemption provision states: "The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C.A. § 1395dd(f).

Neither of these sections evinces an unmistakably clear intent to abrogate the states' Eleventh Amendment immunity. *Accord Pérez–Bourdon v. Commonwealth of Puerto Rico*, 951 F.Supp. 22 (D.P.R.1997). Plaintiffs' reliance on *Helton v. Phelps County Regional Medical Center*, 817 F.Supp. 789, is misplaced. In that case, the hospital accused of violating EMTALA was a county hospital, not a state hospital. It is beyond dispute that political subdivisions of a state do not partake of the state's Eleventh Amendment immunity. *Mt. Healthy*, 429 U.S. 274, 280, 97 S.Ct. 568, 572 ("The bar of the Eleventh Amendment to suit in federal courts ... does not extend to counties and similar municipal corporations"). Since it was not shielded by the Eleventh Amendment, the hospital in *Helton* relied on a state statute that accorded immunity to public entities to the extent they had no insurance coverage. *Helton* at 791. The U.S. District Court for the Eastern District of Missouri relied on *Power v. Arlington Hospital*, 800 F.Supp. 1384 (E.D.Va.1992)—in which the district court held that importing the limits of Virginia's charitable immunities statute EMTALA would allow states to undermine the federal statute by limiting EMTALA recoveries to low levels—in holding that § 1395dd(f) preempted the Missouri statute according the hospital immunity. Both *Helton* and *Power* are inapposite since they did not involve a state's immunity under the Eleventh Amendment, but rather statutory immunity accorded to certain public and/or charitable institutions for public policy reasons.

The controlling precedent here is *Atascadero*, 473 U.S. 234, 105 S.Ct. 3142. In *Atascadero*, the plaintiff sued under § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, which prohibits employment discrimination and provides remedies, procedures and rights against any recipient of federal assistance that violates the Rehabilitation Act. Plaintiff alleged that the Atascadero State Hospital and the California Department of Mental Health had denied him employment solely because of his physical handicaps and therefore had violated § 504. The Supreme Court found that the State had not consented to be sued in federal court merely by choosing to participate in programs funded by the Rehabilitation Act. Furthermore,

the Supreme Court held that Congress may abrogate the Eleventh Amendment only by expressing its intention unequivocally, which it had not done in the Rehabilitation Act. *Id.* at 242, 105 S.Ct. at 3147. *Atascadero* is dispositive and requires the Court to find that Congress did not abrogate the states' Eleventh Amendment immunity in EMTA-LA.

Moreover, any intent by Congress to abrogate the states' Eleventh Amendment immunity in EMTALA would be unavailing in light of the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole*, the Supreme Court overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), and held that while Congress may abrogate the states' Eleventh Amendment immunity when exercising its powers under the Fourteenth Amendment, it does not have that power when acting under Article I. *Id.* at ——, 116 S.Ct. at 1118. The Social Security Act—of which the Medicare scheme, including EMTALA, forms a part—is an exercise of Congress' powers under Article I to tax and to regulate interstate commerce. Therefore, even if it so intended, Congress could not have abrogated the states' Eleventh Amendment immunity by enactment of EMTALA.

■ Furthermore, plaintiffs' claims against the Commonwealth for the alleged EMTALA violation are time-barred. The cause of action authorized by EMTALA is defined by state substantive law. In this case, the relevant state law is Article 1802 of Puerto Rico's Civil Code, which states: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." P.R. Laws Ann. tit. 31, § 5141 (1990). The statute of limitations for tort actions in Puerto Rico is one year from knowledge thereof. P.R. Laws Ann. tit. 31, § 5298 (1990). "Knowledge" includes both "notice of the injury" and "notice of the person who caused it." *Colón Prieto v. Géigel*, 115 D.P.R. 232, 244 (1984) (quoting I.A. Borrell y Soler, *Derecho Civil Español* 500 (Bosch ed.1955)). If a plaintiff brings an action more than one year after the injury, he bears the burden of proving that he lacked the requisite "knowledge" within the statutory period. *Santiago Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987). To carry this burden, a plaintiff must establish that (1) he did not have notice of the injury or knowledge of the person who caused the injury; and (2) that the reason for that lack of knowledge is not negligence or lack of care to acquire the necessary facts. *Fragoso de Conway v. López*, 794 F.Supp. 49, 50 (D.P.R.1992), *aff'd*, 991 F.2d 878 (1st Cir.1993). If plaintiff fails to meet this burden, the statute of limitations will start to run from the day of the injury regardless of whether plaintiff has actual knowledge. *Id.*

■ "Notice of the injury" occurs when some outward or physical sign exists which permits the aggrieved party to realize that he has been injured. *Kaiser v. Armstrong World Indus., Inc.*, 872 F.2d 512, 516 (1st Cir.1989) (citing *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988)). "Notice of the person who caused the injury" is required so that the injured person may know whom to sue. *Id.* (citing *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987)). The relevant inquiry under this prong of the knowledge requirement is whether plaintiffs knew or with the degree of diligence required by law would have known whom to sue. *Id.* (citing *Santiago Hodge*, 833 F.2d at 8). Moreover, a plaintiff may know the author of the injury without knowing the exact name of the tortfeasor or the precise intra-corporate relationships that determine the name of the appropriate defendant. *Santiago Hodge*, 833 F.2d at 7–8.

■ In the case at bar, Vázquez Morales knew of his transfer to the Ponce District Hospital, and the identity of the party that ordered the transfer, allegedly in violation of EMTALA, in 1994. If he desired to sue the Commonwealth as owner of the Yauco Area Hospital for violation of EMTALA, he should have done so by October 27, 1995. The incidents that allegedly occurred at the University Hospital on October 18, 1995, do not change this fact. The spine operation on

that date, during which a gauze was allegedly left inside Vázquez Morales, involves allegations of medical malpractice by a physician, and is completely unrelated to the EMTALA claim, which involves the failure to stabilize the plaintiff before transferring him to the Ponce District Hospital. Although both alleged injuries may have resulted in damage to plaintiff's kidneys, they do not involve the same nucleus of operative facts.

As plaintiffs have no federal cause of action, and no diversity jurisdiction exists, the Court declines to exercise supplemental jurisdiction over plaintiffs' claims against defendant University of Puerto Rico under Article 1802 of Puerto Rico's Civil Code. Furthermore, these claims are also barred by the Eleventh Amendment. The courts have so held time and time again. *See, e.g., Pérez v. Rodriguez Bou,* 575 F.2d 21, 25 (1st Cir. 1978); *Pinto v. Universidad De Puerto Rico,* 895 F.2d 18 (1st Cir.1990); *Nogueras v. University of Puerto Rico,* 890 F.Supp. 60, 64 (D.P.R.1995); *Silva v. Universidad de Puerto Rico,* 817 F.Supp. 1000, 1004 (D.P.R.1993); *Amelunxen v. University of Puerto Rico,* 637 F.Supp. 426, 434 (D.P.R.1986); *aff'd,* 815 F.2d 691 (1st Cir.1987).

## III. CONCLUSION

For the reasons stated, the Court hereby **GRANTS** the motions of both defendants and hereby **DISMISSES** the complaint. Furthermore, plaintiffs' claims against the University of Puerto Rico were clearly barred by existing case law. Attorney Ricardo Ruiz Díaz made no argument for reversal of these precedents. Accordingly, pursuant to Rule 11(c)(1)(B), the Court hereby **ORDERS** Attorney Ruiz Díaz to show cause **on or before June 30, 1997,** why he has not violated Rule 11(b) in presenting these claims in the complaint and why he should not be made to bear defendant University of Puerto Rico's attorney's fees in this action. Judgment shall be entered accordingly.

IT IS SO ORDERED.