### IBERIA LINEAS AEREAS DE ESPAÑA, Plaintiff,

v.

### Xenia VELEZ–SILVA, in her official capacity as Secretary of the Treasury of Puerto Rico and Herman Sulsona, in his official capacity as Director of the Ports Authority of Puerto Rico, Defendants.

### Civil No. 95–1768CCC.

United States District Court, D. Puerto Rico.

March 30, 1999.

Ara Toledo–Danitz, for plaintiff.

Gloria Robinson Guarch, Dept. of Justice, Comm. of Puerto Rico, Guaynabo, PR, for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This action is before us on a Motion to Dismiss for Lack of Subject–Matter Jurisdiction under Rule 12(b)(1), Fed.R.Civ.P., filed by defendant Xenia Vélez–Silva in her official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico (**docket entry 42**) and opposed by plaintiff Iberia Líneas Aéreas de España (Iberia) (**docket entry 44**). The Secretary contends that plaintiff's causes of action should be dismissed because: (a) any monetary relief against the defendant, in her official capacity would be barred by the Eleventh Amendment; and, (b) the declaratory relief sought against the defendant is precluded by the Butler Act and principles of comity (Motion to Dismiss at, p. 2). Iberia's response is that neither the Elev-

enth Amendment nor the Butler Act (48 U.S.C. Sec. 872) are applicable. It asserts that: (a) the "Eleventh Amendment does not bar a foreign nation from challenging a state tax in federal court, (b) even if the amendment applied to this case, the Commonwealth waived its immunity through its conduct, (c) the Foreign Sovereign Immunities Act" (28 U.S.C. § 1602 et seq.) abrogated the state's immunity from suit in federal court when such action is pursued by a foreign state, and, (d) the Eleventh Amendment does not bar declaratory and injunctive relief. As to the Butler Act, plaintiff argues that it does not preclude a foreign nation from challenging a state tax in federal court (Opposition to Motion to Dismiss, at p. 2).

After careful consideration of the allegations and memoranda submitted by the parties, the Court finds that this case must be dismissed for lack of subject-matter jurisdiction.

Iberia is a corporation owned by the Spanish Government. Defendant Xenia Vélez–Silva is Secretary of the Treasury Department of the Commonwealth of Puerto Rico and successor of Manuel Díaz–Saldaña. *See* allegations 1 through 4 of the complaint.

Iberia is an airline company that conducts business in Puerto Rico, providing airline service between Puerto Rico and Spain. The Commonwealth of Puerto Rico, through its Department of Treasury, has levied an excise tax on all parts, supplies and equipment that plaintiff utilizes in its business. Iberia argues that the excise tax, as imposed by the Treasury Department, contravenes the terms and dispositions of the Air Transport Agreement (Treaty) subscribed between the United States and the Government of Spain. It contends that under the terms of the Treaty, Puerto Rico lacks the authority to impose such a tax and seeks various remedies: (a) reimbursement for the taxes already collected; (b) a permanent injunction restraining the Treasury Department from further enforcement of the challenged tax; and, (c) declaratory relief declaring the Treasury Department's action inconsistent with the Treaty. *See* allegations 12 through 29 of the complaint.

The Eleventh Amendment of the U.S. Constitution provides that:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■ In *Ramírez v. Puerto Rico, Fire Service*, 715 F.2d 694, 697 (1st Cir.1983), the First Circuit held that the Eleventh Amendment stands as a palladium of sovereign immunity. It bars federal court lawsuits by private parties insofar as they attempt to impose liabilities necessarily payable from public coffers. Such constitutional provision was adopted to protect the government's public fisc from suits seeking monetary restitution. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991). When a party sues a sovereign seeking monetary relief, federal courts will be barred from hearing such case. *Puerto Rico Ports Authority v. M/V MANHATTAN PRINCE*, 897 F.2d 1, 9 (1st Cir.1990). The state's dignity and solvency are concerns that underpin the Eleventh Amendment. *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 406, 130 L.Ed.2d 245 (1994). The Commonwealth of Puerto Rico also enjoys that constitutional protection. *Figueroa– Rodriguez v. Aquino*, 863 F.2d 1037, 1044 (1st Cir., 1988) ("The Eleventh Amendment, which deprives the federal courts of power to hear claims for damages against any of the United States, has been held to apply to Puerto Rico."). See also. *Trans Am. Recovery Services, Inc. v. P.R. Maritime Shipping Authority*, 820 F.Supp. 38, 41(D.Puerto Rico 1993).

■ The Eleventh Amendment not only protects the sovereign from suits brought ·by private parties, but also against actions

instituted by foreign states. *United Mexican States v. Woods*, 126 F.3d 1220, 1222 (9th Cir.1997); Principality of *Monaco v. Mississippi*, 292 U.S. 313, 330, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) ("As to suits brought by a foreign State, we think that the States of the Union retain the same immunity that they enjoy with respect to suits by individuals whether citizens of the United States or citizens or subjects of foreign State.").

■ In some instances, state instrumentalities will also benefit from the Eleventh Amendment's protection. Two factors must be considered to determine if the instrumentality is shielded against monetary relief. *Trans Am. Recovery Serv., supra*, at 42. It must first be ascertained if the funds to satisfy the potential adverse judgment will be drawn from the public treasury or from independent funds pertaining to the agency. The court must also determine whether the agency exercises a traditional governmental function as opposed to a proprietary function. *Id.* Notwithstanding, the Supreme Court has characterized the vulnerability to the state's purse as the most "salient factor" in an Eleventh Amendment determination. *Hess, supra*, 115 S.Ct. at 404.

["As the Morris court concluded: 'where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries, common sense and rationale of the eleventh amendment require that sovereign immunity attach to the agency.' "] *Id.* at 405. If the funds to satisfy the judgment are to be drawn from the public coffers, plaintiff's case will be barred by the Eleventh Amendment. *Id.* at 404.

■ However, there are situations where plaintiff opts to sue a state officer in his or her official capacity, instead of suing the State. When that occurs, the court must ascertain who is the real party being sued, the state or the officer. If the remedy sought by plaintiff has an effect upon the state's treasury, the state is considered to be the real party, not the officer. In *Regents of the University of California v. Doe*, 519 U.S. 425, 117 S.Ct. 900, 903, 137 L.Ed.2d 55 (1997), the Supreme Court held that when a claim for recovery of money is made, the state is the real, substantial party in interest, not the officer being sued, and is entitled to invoke its sovereign immunity even if individual officials are nominal defendants. *Pennhurst State and School Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *De León López, supra*, at 121.

■ There are instances in which an action brought against a state officer, in her or his official capacity, is not barred by the Eleventh Amendment. Cases against an officer seeking to prevent future violations of federal law are not precluded by the constitutional provision. *Melof v. Hunt*, 718 F.Supp. 877, 879 (M.D.Ala. 1989).[1]

■ Eleventh Amendment immunity may be abrogated in various ways: "a state may randomly consent to suit in a federal forum; a state may waive its own immunity by the statute or the like; Congress may abrogate state immunity or under certain circumstances other constitutional imperatives may take precedence over the Eleventh Amendment's federal court bar." *Futura Devel. of Puerto Rico v. Estado Libre Asociado*, 962 F.Supp. 248, 254 (D.P.R.1997). In those cases where Congress has decided to abolish the state's immunity, it must express its intention unequivocally. *Vásquez–Morales v. Estado Libre Asociado*, 967 F.Supp. 42, 46 (D.P.R.1997); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985) ("For these

---

1. "If the suit involves an injunction seeking a prospective remedy for a continuing violation of federal law, a federal court may enjoin state officials from continuing such activity." *United Mexican States, supra*, at 1222; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

reasons, we hold that, consistent with Quern, Edelman, and Pennhurst II, **Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself")** **(emphasis provided)**; *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 2584, 115 L.Ed.2d 686 (1991). If the state has not waived its immunity it cannot be hailed into federal court, even in cases where a federal question controversy is said to be involved.

■ None of the arguments raised by plaintiff convince us that Congress abrogated Eleventh Amendment protection enjoyed by the Commonwealth of Puerto Rico by way of the Foreign Sovereign Immunities Act (FSIA). According to plaintiff, the terms of the Foreign Sovereign Immunities Act must be interpreted broadly. *Nolan v. Boeing,* 919 F.2d 1058, 1068 (5th Cir.1990). That is irrelevant. *Nolan* does not discuss at all whether the Eleventh Amendment proscribed a lawsuit by a foreign state against a state in federal court because that question was simply not before it. There is no basis to conclude that because the FSIA grants a foreign state defendant or third-party defendant a right of removal under 28 U.S.C. Sec. 1441(d), and it can remove not only the third-party claims against it, but the main claims as well, a federal court must have jurisdiction over a suit brought by a foreign state against a state, regardless of the Eleventh Amendment which bars it. A similar analogy was found unconvincing in *Wisconsin Department of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 2054, 141 L.Ed.2d 364 (1998) where the Court concluded that: "A State's proper assertion of an Eleventh Amendment bar after removal means that the federal court cannot hear the barred claim." In the case at bar all of the claims are Eleventh Amendment barred, except for the injunctive relief which is precluded by the Butler Act.

■ The Supreme Court, however, has emphatically reiterated that Congress must express its intention to abolish the Eleventh Amendment in unmistakable language in the statute itself. *Atascadero State Hospital, supra,* 105 S.Ct. at 3148; *Blatchford, supra,* 111 S.Ct. at 2584. We do not find that explicit and unequivocal Congressional expression within the FSIA. Simply stated, the Foreign Sovereign Immunities Act does not contain a clear and manifest expression that may indicate that Congress intended it to override the Eleventh Amendment's protection. *Vásquez–Morales, supra,* at 45. There is no indication that Congress intended the FSIA to abolish a State's right to Eleventh Amendment protection against suits by foreign state in United States Courts.

■ Furthermore, the FSIA was not designed as an instrument for foreign nations to sue the states in federal courts. It was intended to serve as a means through which the foreign nations could be held accountable in United States courts. 5 *U.S.Code Congressional and Administrative News,* 6604 (1976). According to the Ninth Circuit, the FSIA provides uniformity both in procedure and substance to treat foreign nations subjected to suits in American Courts. *Nolan, supra,* at 1064. "FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson,* 507 U.S. 349, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993). According to the Supreme Court, while foreign nations maintain their immunity with regard to suits brought against them in federal court, their immunity may be lost, for example, where they engage in a commercial activity carried on in the United States. *Saudi Arabia, supra,* 113 S.Ct. at 1477.

Since the very beginning defendant reserved its right of not submitting to this Court's jurisdiction. *See Motion for Special Appearance and Enlargement to Answer* **(docket entry 3)** and *Motion Requesting Second Extension of Time to Answer* **(docket entry 8)**. This case does not present the necessary elements to conclude that the Commonwealth's actions

amount to a waiver of the Commonwealth's immunity. We conclude that the defendant's Eleventh Amendment defense was timely raised and that it was not waived.

■ Consequently, this Court must ascertain if the claims made by plaintiff, are barred by the Eleventh Amendment. It should be remembered that Iberia requested two types of remedies. While it sought to prevent further enforcement of the excise tax imposed by the Puerto Rico Government, it also requested monetary reimbursement for the "illegally" collected taxes. We find that plaintiff's request for reimbursement is barred by the Eleventh Amendment.

It is the Commonwealth of Puerto Rico that implemented the disputed tax. Neither Xenia Vélez–Silva not Manuel Díaz–Saldaña collected the challenged taxes for their own benefit. They acted on behalf of the Treasury Department, a governmental entity responsible for enforcing the tax laws in Puerto Rico. If someone was responsible for reimbursing the amounts exacted by the Treasury Department, it would be the Commonwealth of Puerto Rico. The real and substantial party is the Commonwealth of Puerto Rico not the individual government officer. The reimbursement claim made by Iberia would come out of the Commonwealth's pocket. *Pennhurst State and School Hospital*, supra, 104 S.Ct. at 908 (1984); *De León–López*, *supra*, at 121; *Regents of the University of California*, supra, 117 S.Ct. at 903 (1997).

As to the injunctive relief sought, federal courts have adopted a hands off approach with respect to state tax administration. *National Private Truck Council v. Okl. Tax Com'n*, 515 U.S. 582, 115 S.Ct. 2351, 2354, 132 L.Ed.2d 509 (1995). Such axiom is inspired on a notion of comity and federalism that exists between federal and state governments. *Id.*[2]

Both the Tax Injunction Act (28 U.S.C. Sec. 1341) and the Butler Act (48 U.S.C. Sec. 872) recognize this doctrine. Both statutes have been construed in pari materia. *Trailer Marine Transport Corp. v. Rivera–Vázquez*, 977 F.2d 1, 5 (1st Cir. 1992). In its pertinent part the Butler Act provides that:

> "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico."

The statute clearly forecloses federal jurisdiction in those cases where plaintiff seeks enjoinment of a state tax law. *Parker v. Agosto–Alicea*, 878 F.2d 557, 558 (1st Cir. 1989); *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). The Butler Act forbids federal courts from entertaining actions designed to enjoin collection of state taxes either by injunctive or declaratory means. *San Juan Cellular Telephone v. Pub. Serv. Com'n*, 967 F.2d 683, 685 (1st Cir.1992).

■ The jurisdictional bar set forth by the Butler Act is not absolute. It does not apply to cases where the Commonwealth courts lack a plain, speedy and efficient remedy. *Seatec Intern., Ltd. v. Secretary of the Treasury*, 525 F.Supp. 980, 981 (D.P.R.1981). A state remedy is deemed to be plain, speedy and efficient remedy when it provides the dissatisfied party with a right to appeal the determination made by the state agency. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 514, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). If the remedy provided by the state court is not adequate, the dissatisfied party will be allowed to pursue his or her claim in federal court. *Seatec Intern., Ltd., supra*, at 981.

■ Plaintiff utilizes a two-tiered argument to support its contention that the

2. "We have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration."

Butler Act does not preclude its injunctive and declaratory claims from being considered by this Court. It argues that pursuant to the Supreme Court's decision in *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) foreign nations are not forbidden from challenging state tax laws in federal court. It also claims that the legal remedy afforded by the Commonwealth of Puerto Rico is not adequate as a practical matter. More specifically, plaintiff contends that the available remedy under Puerto Rico law amounts to nothing more than a futility (Opposition to Motion to Dismiss, at p. 13).

In *Moe,* the Supreme Court concluded that the Kootani tribes were not barred by the Tax Injunction Act based on an unequivocal congressional statement contained in 28 U.S.C. Sec. 1362. *Moe, supra,* 96 S.Ct. at 1641. The Supreme Court based its decision on the express congressional authorization contained in section 1362, and not as plaintiff implies, on the fact that Indian nations have been regarded as being "foreign nations". For the Court, neither the Indian tribes nor the Federal Government are barred by the prohibition established by the tax Injunction. *Id.* Iberia cannot reasonably argue that section 1362 vested upon it the same privileges that said section recognized on behalf of the Indian tribes. As the Supreme Court clearly stated, "federal laws such as section 1362 were adopted to only benefit the Indian community." *Moe, supra,* 96 S.Ct. at 1644. Plaintiff has not brought to our attention any other statute similar to section 1362, that would entitle it to be exempted from the jurisdictional bar erected by the Butler Act.

▮ Iberia's contention that the remedy afforded by the Commonwealth Government is inadequate is also unconvincing. The Commonwealth's Legislature instituted a process through which the taxpayer can challenge taxes imposed. According to the statute, any person that feels that he has paid or that there has

been collected from him, unlawful or unduly taxes, can apply in writing to the Secretary of the Treasury for a credit or a reimbursement of the same. Puerto Rico Laws Ann., Title 13 Sec. 261. Such section also establishes that if the Secretary of the Treasury denies the taxpayer's application, the dissatisfied party has (30) days to appeal the denial to the Superior Court of Puerto Rico. *Id.*

In this case the procedure afforded by the Commonwealth legislature is plain, speedy and efficient. The statute complies with the minimal procedural criteria required from this type of remedy. It provides the taxpayer with a right to appeal the determination made by the Treasury Department. If the state law provides for such an appeal the remedy is deemed to be plain, speedy and efficient. *Rosewell,* supra, 450 U.S. at 513, 101 S.Ct. 1221.

▮ Iberia contends that in practice the remedy is inadequate because of the Secretary's delay in reaching a decision. As in *Rosewell,* plaintiff does not mention any procedural defect in the Commonwealth's remedy, other than delay. Delay alone is not sufficient to render the statute invalid. As the Supreme Court has stated, the state remedy afforded to the taxpayer does not have to be the speediest. *Rosewell, supra,* at 520, 101 S.Ct. 1221. If a tax payer believes that the Secretary of Treasury is taking too long to deny a tax reimbursement application, he can resort to various legal remedies to compel the Secretary to act promptly. The fact that the Secretary of Treasury does not act as swiftly as the taxpayer may desire does not create an exemption to the jurisdictional bar created by the Butler Act. *Id.* Neither has plaintiff produced specific evidence as to the average amount of time that the Puerto Rico Superior Court takes to decide a taxpayer's appeal.

Important principles of comity and federalism require us to adopt a restrictive approach with regard to any exception under the Butler Act. Although plaintiff may

be dissatisfied with the procedure as a whole, it has not identified significant procedural flaws that render it inappropriate. The remedy established by the Commonwealth Legislature complies with minimum procedural requirements imposed by the Supreme Court. *Rosewell, supra,* at 514, 101 S.Ct. 1221. The Butler Act contains an unequivocal mandate from Congress that forbid this Court from entertaining challenges to state tax laws. We are not inclined to create exceptions or loopholes to such a clear congressional mandate.

In view of the foregoing, the Court concludes that this action is barred under both the Eleventh Amendment and the Butler Act. Accordingly, defendant's Motion to Dismiss (**docket entry 42**) is GRANTED.

SO ORDERED.