**Affirmed and Opinion filed August 25, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00986-CV

---

**MEENA BANSAL INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF MUNISH BANSAL, DECEASED, AND VIRINDER BANSAL, Appellants**

V.

**UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, Appellee**

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2014-53494**

---

### O P I N I O N

In this wrongful-death and survival action, the plaintiffs appeal the grant of the defendant state hospital's plea to the jurisdiction asserting sovereign immunity. We conclude that the hospital's Eleventh Amendment sovereign immunity from suit on the plaintiff's federal claim has been neither waived nor abrogated, and that the plaintiffs' state-law claims cannot be brought within the Texas Tort Claims Act's

waiver of sovereign immunity. We therefore affirm the trial court's judgment granting the jurisdictional plea and dismissing the plaintiffs' claims with prejudice.

## I. BACKGROUND

After surgery and eight rounds of chemotherapy for stage IV colon cancer, Munish Bansal was admitted to the University of Texas M.D. Anderson Cancer Center with complaints of fever, fluid buildup, and difficulty urinating. Munish remained in the hospital until he died on September 19, 2012, a week after his admission.

His father Virinder Bansal and his wife Meena Bansal, individually and as the representative of Munish's estate, sued M.D. Anderson. They alleged that after Munish's oncologist determined that chemotherapy had not worked and recommended Munish's discharge to hospice care, M.D. Anderson did not stabilize Munish or relieve his pain. According to the Bansals, Munish died less than twenty-four hours after M.D. Anderson allegedly reduced the care it provided to him.

The Bansals asserted state-law claims of breach of contract, negligence, and negligence per se, and a federal claim for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"). *See* 42 U.S.C. § 1395dd (2014). EMTALA provides that if a person comes to a hospital and the hospital determines that the person has an emergency medical condition, then the hospital must either (a) provide such further medical examination and treatment "as may be required to stabilize the medical condition," given the hospital's available staff and facilities; or (b) transfer the person to another medical facility if certain conditions are met. *Id.* § 1395dd(b). If the hospital is a "participating hospital," that is, if it has entered into a provider agreement required to accept Medicare payments, then a person harmed by the hospital's violation of EMTALA may sue the hospital and obtain the personal-

2

injury damages available under state law. *Id.* § 1395dd(d)(2)(A) (providing for suit); *id.* § 1395dd(e)(2) (defining "participating hospital" as one that has entered into a provider agreement under 42 U.S.C. § 1395cc); *id.* § 1395cc (listing the contents of the agreement required for a provider of services to receive Medicare payments).

M.D. Anderson filed a plea to the jurisdiction in which it argued that it was entitled to sovereign immunity from suit. About a year later, the Bansals amended their petition, and the parties filed a Rule 11 agreement in which they agreed that the Bansals would neither seek additional discovery nor amend their pleadings for the purpose of establishing the trial court's subject-matter jurisdiction over their claims. M.D. Anderson then filed a brief in support of its jurisdictional plea in which it argued that the Bansals' claims did not fall within the waiver of sovereign immunity found in the Texas Tort Claims Act ("the TTCA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011 & Supp. 2016). In response, the Bansals maintained that EMTALA preempts sovereign immunity.

The trial court granted the plea to the jurisdiction and dismissed the Bansals' claims with prejudice. In a single issue, the Bansals challenge that ruling.

The Bansals concede that, as pleaded, their state-law claims are barred by sovereign immunity. Thus, the focus of this appeal is whether the trial court erred in determining that M.D. Anderson is entitled to sovereign immunity from the Bansals' EMTALA claim.

## II. STANDARD OF REVIEW

Unless waived or abrogated, sovereign immunity shields the state from a lawsuit for damages by depriving the trial court of subject-matter jurisdiction. *See Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 n.1 (Tex. 2016) ("[I]t is the Legislature's sole province to waive or abrogate sovereign

immunity." (quoting *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002))); *Univ. of Houston v. Barth*, 403 S.W.3d 851, 853 (Tex. 2013) (per curiam) (dismissing case for lack of subject-matter jurisdiction where sovereign immunity was not waived); *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) (sovereign immunity applies to lawsuits for damages). The plaintiff bears the burden to establish the trial court's jurisdiction. *See Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012).

Whether the trial court has subject-matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *See Suarez v. City of Texas City*, 465 S.W.3d 623, 632 (Tex. 2015). We review the trial court's ruling on a plea to the jurisdiction by determining whether the plaintiff's pleadings, construed in the plaintiff's favor, allege facts sufficient to affirmatively demonstrate the trial court's jurisdiction over the claim. *See Hearts Bluff*, 381 S.W.3d at 476. If the plaintiff's pleadings affirmatively negate jurisdiction, then the court must grant the plea to the jurisdiction. *See Heckman*, 369 S.W.3d at 150.

### III. THRESHOLD ISSUES

In the trial court, M.D. Anderson argued that the Bansals' EMTALA claim does not fall within the waiver of immunity under the TTCA. On appeal, however, M.D. Anderson argues for the first time that the claim is barred by M.D. Anderson's sovereign immunity under the Eleventh Amendment. *See* U.S. CONST. amend. XI. The Bansals reply that this court cannot consider M.D. Anderson's Eleventh Amendment argument because (a) M.D. Anderson is prohibited from raising an argument on appeal that was not raised in the trial court, and (b) raising a new sovereign-immunity argument on appeal violates the parties' Rule 11 agreement. *See* TEX. R. CIV. P. 11. We disagree with both contentions.

4

**A.    New Arguments in Support of Sovereign Immunity Can Be Raised on Appeal.**

The Bansals contend that because M.D. Anderson did not argue in the trial court that it was entitled to sovereign immunity under the Eleventh Amendment, we cannot address that argument on appeal. In support of this contention, the Bansals rely on *Anderson v. American Federation of Government Employees, AFL-CIO*, 338 S.W.3d 709, 713 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). In holding that an appellate court "do[es] not have jurisdiction to consider grounds outside those raised in the plea to the jurisdiction," the First Court of Appeals relied on two cases: *Dallas v. First Trade Union Savings Bank*, 133 S.W.3d 680, 687 (Tex. App.—Dallas 2003, pet. denied), *disapproved of by Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012), and *Brenham Housing. Authority v. Davies*, 158 S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.), *disapproved of by Rusk State Hosp. v. Black*, 392 S.W.3d 88 (Tex. 2012))).

The statements in *Anderson*, *First Trade Union Savings Bank*, and *Brenham Housing Authority* have not been an accurate statement of the law since at least 2012, when the Texas Supreme Court decided *Rusk State Hosp. v. Black*.[1] In that interlocutory appeal from the denial of a motion to dismiss a health-care-liability claim, the court held that sovereign immunity could be raised for the first time on appeal, even though no plea to the jurisdiction had been filed in the trial court. *See Rusk*, 392 S.W.3d at 95. In the course of that decision, the *Rusk* court expressly

---

[1] We disavowed our holding in *Brenham Housing Authority v. Davies* even before *Rusk* was decided, holding instead that "[a]n appellate court must consider challenges to the trial court's subject-matter jurisdiction on interlocutory appeal, regardless of whether such challenges were presented to or determined by the trial court." *See Fort Bend Cty. Toll Rd. Auth. v. Olivares*, 316 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 850–51 (Tex. 2000)). We explained that we were not bound to follow *Brenham Housing Authority* because it was contrary to the Texas Supreme Court's decision in *Gibson*. *See id.* at 118 n.1.

disapproved of the Fifth Court of Appeals' contrary holding in *First Trade Union Savings Bank* and our similar holding in *Brenham Housing Authority*. *See id.* at 95 n.8. These two now-disapproved opinions were the only authorities cited by the *Anderson* court as support for the holding that an appellate court lacks jurisdiction to consider grounds for challenging the trial court's subject-matter jurisdiction that were not raised in the plea to the jurisdiction. *See Anderson*, 338 S.W.3d at 713.

It is now well-established that "an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015) (quoting *Dall. Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam)); *see also Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court."). Thus, we are not merely authorized to consider new immunity-from-suit arguments; we are required to do so.

**B.    In Its Rule 11 Agreement with the Bansals, M.D. Anderson Did Not Waive the Right to Raise New Sovereign-Immunity Arguments on Appeal.**

The Bansals additionally assert that in a Rule 11 agreement between the parties, M.D. Anderson waived the right to raise new sovereign-immunity arguments. *See* TEX. R. CIV. P. 11. The Rule 11 Agreement says,

> This is to confirm the parties' agreement in the above referenced case whereby Plaintiffs agree they will not seek any additional discovery, either written or oral, for the purpose of establishing subject matter jurisdiction of the court. In addition, Plaintiffs agree that they waive the opportunity to further amend Plaintiffs' Petition for the purposes of establishing subject matter Jurisdiction of the court. These agreements are made in anticipation of Defendant filing a Plea to the Jurisdiction based on sovereign immunity.

6

M.D. Anderson did not promise that it would waive the right to raise additional arguments on appeal in support of sovereign immunity. At best, it promised only that it would file a plea to the jurisdiction based on sovereign immunity. The agreement does not address the scope of the arguments that M.D. Anderson could make in support of its assertion of sovereign immunity.

Because we are required to consider arguments implicating subject-matter jurisdiction, and because the Rule 11 agreement does not affect that duty, we turn now to the merits of the dispositive Eleventh Amendment argument.

## IV. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. But, "the bare text of the Amendment is not an exhaustive description of the States' constitutional immunity from suit." *Alden v. Maine*, 527 U.S. 706, 736 (1999).

Notwithstanding the Bansals' assertions to the contrary, Eleventh Amendment sovereign immunity applies to federal claims against the State, regardless of whether the claims are brought in federal or state court. *See id.* at 754 ("In light of history, practice, precedent, and the structure of the Constitution, we hold that the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation.");[2] *Hoff v. Nueces County*, 153 S.W.3d 45, 48 (Tex. 2004) (per curiam) ("Eleventh Amendment immunity

---

[2] "The Social Security Act—of which the Medicare scheme, including EMTALA, forms a part—is an exercise of Congress'[s] powers under Article I to tax and to regulate interstate commerce." *Vazquez Morales v. Estado Libre Asociado de Puerto Rico*, 967 F. Supp. 42, 46 (D.P.R. 1997).

protects nonconsenting states from being sued in their own courts for federal law claims.").

Under the Eleventh Amendment, a State's constitutional immunity from suit applies unless Congress validly abrogates it or the State voluntarily waives it. *See Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010). It is undisputed that M.D. Anderson is an arm of the State. *See* Act of May 26, 1989, 71st Leg., R.S., ch. 644, § 2, 1989 TEX. GEN. LAWS 2129, 2130 –31 (stating that the University of Texas M.D. Anderson Cancer Center is part of the University of Texas System) (amended 2001, 2009, and 2013) (current version at TEX. EDUC. CODE ANN. § 65.02(a)(11)); *Hencerling v. Tex. A & M Univ.*, 986 S.W.2d 373, 374 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("State universities are agencies of the State and enjoy sovereign immunity."). Thus, M.D. Anderson is entitled to immunity from suit on the Bansals' EMTALA claim unless the Bansals established either that Congress validly abrogated M.D. Anderson's Eleventh Amendment immunity or that Texas voluntarily waived it.

**A.     EMTALA Does Not Abrogate the States' Eleventh Amendment Immunity.**

Congress can abrogate the States' immunity only if it both "(1) unequivocally expresses its intent to do so, and (2) acts 'pursuant to a constitutional provision granting Congress the power to abrogate.'" *See Herrera*, 322 S.W.3d at 195 & n.12 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 59 (1996)). Here, Congress did neither.

***1.  Congress did not unequivocally express an intent to abrogate Eleventh Amendment immunity.***

EMTALA provides in pertinent part as follows:

**(b)  Necessary stabilizing treatment for emergency medical conditions and labor**

**(1)  In general**

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

**(A)** within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

**(B)** for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

. . . .

**(d)  Enforcement**

. . . .

**(2)  Civil enforcement**

**(A)  Personal harm**

Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

**(e)  Definitions**

In this section:

. . . .

**(2)** The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.

42 U.S.C.A. § 1395dd(b)(1), (d)(2), (e)(2).

9

Because EMTALA does not mention immunity or even differentiate between private hospitals and those operated by the State, it cannot be said that Congress unequivocally expressed an intention to abrogate the States' Eleventh Amendment immunity from private suits for EMTALA violations. *Compare id. with* 42 U.S.C.A. § 2000d-7(a)(1) (2014) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . the provisions of any . . . Federal statute prohibiting discrimination by recipients of Federal financial assistance."); *see also Morres v. Deer's Head Hosp. Ctr.*, CIV. CCB-08-2, 2008 WL 2991178, at *3 (D. Md. July 25, 2008) (not designated for publication) ("Although Congress undoubtedly intended to create a federal cause of action for EMTALA violations, there is no indication in the statute that it intended to provide specifically for such suits against states."), *aff'd,* 324 Fed. Appx. 216 (4th Cir. 2009) (per curiam) (not designated for publication).

### 2.      *EMTALA does not fall within a constitutional provision granting Congress the power to abrogate Eleventh Amendment immunity.*

The principal source for abrogation authority is § 5 of the Fourteenth Amendment. *Herrera*, 322 S.W.3d at 195. To pass constitutional muster, § 5 legislation must meet the two-part test of *City of Boerne v. Flores*, 521 U.S. 507 (1997). That is, it must (a) counter identified constitutional injuries by the States and (b) exhibit "congruence and proportionality" between the injuries and the means adopted to prevent or remedy them. *Herrera*, 332 S.W.3d at 195.

EMTALA was not enacted to remedy constitutional violations because the Constitution does not confer a right to stabilizing medical treatment. EMTALA instead was passed to create a legal obligation that did not previously exist. *See Brooks v. Md. Gen. Hosp., Inc.*, 996 F.2d 708, 710 (4th Cir. 1993) ("Congress expressed concern that hospitals were abandoning the longstanding practice of

10

providing emergency care to all . . . . Under traditional state tort law, hospitals are under no legal duty to provide this care. Accordingly, Congress enacted EMTALA to require hospitals to continue to provide it."). Because EMTALA was not intended to "counter identified *constitutional* injuries by the States," Congress could not validly abrogate the States' sovereign immunity to EMTALA claims.

**B.      Texas Did Not Voluntarily Waive Sovereign Immunity from Private Civil EMTALA Claims.**

According to the Bansals, M.D. Anderson voluntarily waived Eleventh Amendment immunity because it elected to be a "participating hospital" under EMTALA—that is, it filed a provider agreement enabling it to receive Medicare payments—and EMTALA allows a person who is harmed as a direct result of an EMTALA violation to bring a civil action for damages against a "participating hospital." *See* 42 U.S.C. § 1395dd(d)(2)(A). The Bansals reason that by voluntarily becoming a "participating hospital" entitled to Medicare payments, M.D. Anderson necessarily consented to waive its immunity from private civil suits for EMTALA violations.

The United States Supreme Court rejected a similar argument in *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985), *superseded by statute as stated in Lane v. Peña*, 518 U.S. 187, 198 (1996). In *Atascadero*, a job applicant with diabetes and no sight in one eye sued a California state hospital and a state agency under the federal Rehabilitation Act of 1973 after he allegedly was denied employment based solely on those physical conditions. *Id.* at 236. The plaintiff based the suit on the Rehabilitation Act's provisions barring any recipient of federal assistance from discriminating against a person with a disability and authorizing any person aggrieved by a violation of the Rehabilitation Act to sue for damages. *See id.* at 244–45. The state-entity defendants successfully moved for dismissal based on Eleventh

11

Amendment immunity. *See id.* at 236. Because other provisions in the Rehabilitation Act demonstrated that states are "the express intended recipients of federal assistance," the intermediate appellate court ruled that "the State by its participation in the program authorized by Congress had in effect consented" to be sued for its alleged violations of the statute. *Id.* at 246 (quoting 735 F.2d 359, 360, 361 (9th Cir. 1984)).

The United States Supreme Court reversed, explaining that "the mere receipt of federal funds cannot establish that a State has consented to suit," and that the Rehabilitation Act "falls far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Id.* at 246. The Court instead held that "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Id.* at 243.

The reasoning in *Atascadero* applies with even greater force here. Unlike the Rehabilitation Act, EMTALA does not make state entities "the express intended recipients" of federal funds. To the contrary, EMTALA does not even distinguish between state and private hospitals. When "Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Congress did not express such an intention in EMTALA.

Although the Bansals have attempted to read a waiver of immunity into the statute, the United States Supreme Court repeatedly has held that the law does not recognize an implied or constructive waiver of sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 284 (2011) ("Waiver [of sovereign immunity] may not be implied."); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 672, 683 (1999) (rejecting the argument that Congress may "exact

constructive waivers of sovereign immunity through the exercise of Article I powers" because such a "forced waiver" is merely abrogation by another name, and Article I "gives Congress no authority to abrogate state sovereign immunity"). Instead, binding precedent "requir[es] that a State's express waiver of sovereign immunity be unequivocal." *Coll. Sav. Bank*, 527 U.S. at 680. Because Congress did not unambiguously require such a waiver, and no waiver was expressly and unequivocally given, M.D. Anderson's Eleventh Amendment immunity from suit for allegedly violating EMTALA remains intact.

**C.     Sovereign Immunity Forecloses the Bansals' Federal Preemption Arguments.**

In a related vein, the Bansals contend that by virtue of the Supremacy Clause, federal law preempts state law, and thus, EMTALA preempts sovereign immunity. *But see Bond v. United States*, 134 S. Ct. 2077, 2088–89 (2014) (courts do not presume that federal statutes preempt state law or abrogate sovereign immunity).

The flaw in this argument is that Eleventh Amendment sovereign immunity is not a matter of state law. As the United States Supreme Court explained in *Alden v. Maine*, the States' sovereign immunity predates the ratification of the Constitution, and "exists today by constitutional design." *Alden*, 527 U.S. at 713, 733. A State therefore has a "constitutional privilege" to assert its Eleventh Amendment sovereign immunity in its own courts. *See id.* at 754–55.

In *Alden*, the Court rejected a preemption argument that was based on the same reasoning followed by the Bansals. The *Alden* petitioner maintained that, as a result of Supremacy Clause, "where Congress enacts legislation subjecting the States to suit, the legislation by necessity overrides the sovereign immunity of the States." *See id.* at 731. The Court rejected that argument, stating, "The Constitution, by delegating to Congress the power to establish the supreme law of the land when

13

acting within its enumerated powers, does not foreclose a State from asserting immunity to claims arising under federal law . . . ." *Id.* at 732. The Court further held that "the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." *Id.* at 754.

To summarize, if Congress did not validly abrogate sovereign immunity to EMTALA claims (and Congress did not), and Texas did not voluntarily waive its sovereign immunity to EMTALA claims (and Texas did not), then an arm of the Texas state government cannot be sued for an EMTALA violation, regardless of whether EMTALA would preempt state law in a suit against a private hospital. *See also Drew v. Univ. of Tenn. Reg'l Med. Ctr. Hosp.*, 211 F.3d 1268 (6th Cir. 2000) ("Preemption determines what law applies, but sovereign immunity determines whether the State can be sued at all. If sovereign immunity applies, then any discussion of preemption is advisory, and we would lack jurisdiction to address it.").

The preemption cases on which the Bansals rely are not inconsistent with this result. In nearly all of the preemption cases the Bansals cite, the authoring court did not consider Eleventh Amendment immunity because the lawsuit was not filed against a provider that was a State entity. Instead, the suits at issue were filed against a political subdivision of the state (such as a county or a hospital district) or an entity operated by such a political subdivision (such as a county hospital or municipal hospital).[3] Eleventh Amendment immunity "does not extend to counties and similar

---

[3] *See, e.g.*, *Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068, 1069 (8th Cir. 2000) (hospital district); *Heimlicher v. Steele*, 615 F. Supp. 2d 884, 894 (N.D. Iowa 2009) (county hospital); *Williams v. County of Cook*, No. 97 C 1069, 1997 WL 428534 (N.D. Ill. July 24, 1997) (unpublished) (county that operated hospital); *Etter v. Bd. of Trustees of N. Kansas City Hosp.*, 95-0624-CV-W-6, 1995 WL 634472, at *1 (W.D. Mo. Oct. 26, 1995) (unpublished) (board of municipal hospital); *Helton v. Phelps Cty. Reg'l Med. Ctr.*, 817 F. Supp. 789, 789 (E.D. Mo. 1993) (county hospital).

14

municipal corporations." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see also N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193 (2006) ("A consequence of this Court's recognition of preratification sovereignty as the source of immunity from suit is that only States and arms of the State possess immunity from suits authorized by federal law.").[4]

## D. The Bansals Cannot Amend Their Pleadings to Avoid Sovereign Immunity.

The Bansals ask that if we conclude that they failed to plead a claim for which sovereign immunity is waived, we remand the case for them to amend their pleadings to cure the jurisdictional defect. They assert that they could bring their claims within the Texas Tort Claims Act's waiver of sovereign immunity by pleading that M.D. Anderson "wrongfully used pills and nebulizers (personal property) to avoid the more proper use of a ventilator and intravenous antibiotics, thereby causing damage."[5]

If the pleadings and record are insufficient either to establish or to conclusively negate jurisdiction, then we generally will remand to give the plaintiffs an

---

[4] The Bansals quote extensively from one case that does mention Eleventh Amendment immunity: *Godwin v. Memorial Medical Center*, 130 N.M. 434, 437, 25 P.3d 273, 276 (2001). That case, however, is inapposite. Unlike Texas, New Mexico abolished its common-law sovereign immunity—that is, its pre-ratification immunity—but replaced it a year later with a state statutory grant of immunity that does not distinguish between State entities and the State's political subdivisions. *See Upton v. Clovis Mun. Sch. Dist.*, 140 N.M. 205, 207, 141 P.3d 1259, 1261 (2006). As part of that statute, New Mexico's legislature announced that the State retained its "immunity from suit *in federal court* under the eleventh amendment to the United States constitution," *see* N.M. STAT. ANN. § 41-4-4(F) (West, Westlaw through 2016 2d R.S.) (emphasis added), but *Godwin* was decided in a New Mexico state court. Eleventh Amendment sovereign immunity therefore appears inapplicable to federal claims in New Mexico state courts. Because that result is dictated by state law that differs from ours, we do not find *Godwin* instructive.

[5] The Bansals also ask that if we conclude that they failed to plead the elements of an actionable EMTALA violation, we remand to give them an opportunity to amend their pleadings to assert that M.D. Anderson acted in bad faith when it admitted Munish to the hospital. Because we conclude that sovereign immunity from civil damage suits for EMTALA violations has been neither abrogated nor waived, the question of whether an EMTALA violation was sufficiently alleged is moot.

15

opportunity to amend their pleadings unless the plaintiffs (1) failed to show jurisdiction despite having had a full and fair opportunity in the trial court to develop the record and amend their pleadings, or (2) would be unable to show the existence of jurisdiction even if the cause were remanded and such an opportunity were afforded. *See Rusk*, 392 S.W.3d at 96.

We need not determine whether the Bansals already have had a full and fair opportunity to amend their pleadings, nor is it necessary to consider whether, under the parties' Rule 11 agreement, the Bansals have waived the opportunity to amend their pleadings. In any event, further amendment would futile because repleading would not bring the Bansals' claims within the scope of the TTCA's waiver of immunity.

Under the TTCA, a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011). Sovereign immunity from suit has been waived to the extent of liability created by the TTCA. *Id.* § 101.025(a). The Bansals' complaint, however, is not that M.D. Anderson caused Munish's pain or his death by its use of tangible personal property, but that M.D. Anderson failed to use different tangible personal property that would have eased his pain or prolonged his life. Failure to use tangible personal property is not within the scope of the TTCA's waiver of sovereign immunity. *See, e.g.*, *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587–89 (Tex. 2001) (holding that the alleged misuse of pain-reducing and anti-nausea medications, intravenous fluids, and diagnostic equipment that camouflaged the symptoms of meningitis is not a claim within the TTCA's waiver of immunity); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585–86 (Tex. 1996) (explaining that, by alleging that health-care providers

failed to prescribe medications that could have prevented the injury, the plaintiffs alleged the non-use of tangible property, and thus, their claim was not within TTCA's waiver of immunity); *see also Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880–81 & nn. 3–8 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (explaining that the TTCA's tangible personal-property provision does not waive sovereign immunity for injuries proximately caused by the negligent exercise of medical judgment, the use or misuse of information, the failure to act or to use property, or the failure to supervise, investigate, or monitor). We therefore deny the Bansals' request that we remand the case to allow them to replead.

## V. CONCLUSION

M.D. Anderson's Eleventh Amendment sovereign immunity bars the Bansals' claim for allegedly violating EMTALA, and their state-law claims cannot be brought within the TTCA's waiver of immunity because the claims are based on the non-use rather than the use of tangible personal property. We therefore affirm the trial court's order granting M.D. Anderson's plea to the jurisdiction and dismissing the Bansals' claims with prejudice.


/s/     Tracy Christopher
         Justice



Panel consists of Justices Boyce, Christopher, and Jamison.

17