**RUSK STATE HOSPITAL, Petitioner,**

v.

**Dennis BLACK and Pam Black, Individually and as Representatives of the Estate of Travis Bonham Black, Deceased, Respondents.**

No. 10–0548.

Supreme Court of Texas.

Argued Oct. 6, 2011.

Delivered Aug. 31, 2012.

Clarence Andrew Weber, Kelly Hart & Hallman LLP, Daniel T. Hodge, First Asst. Attorney General, David C. Mattax, Director of Defense Litigation, Jonathan F. Mitchell, Solicitor General, Timothy Edward Boughal, Office of the Attorney General, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Greg W. Abbott, Attorney General of Texas, Michael P. Murphy, Asst. Solicitor General, William (Bill) J. Cobb III, Attorney General's Office, Deputy Atty. General for Civil Litigation, Austin, TX, James C. Ho, Gibson

Dunn & Crutcher, LLP, Dallas, TX, for Rusk State Hospital.

Dennis Gerald Black, Jeramy Mitchell Skaggs, Black & Skaggs, P.C., Tyler, TX, for Dennis Black.

Justice JOHNSON delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice GREEN, Justice WILLETT, and Justice GUZMAN joined.

In this health care liability claim the trial court denied Rusk State Hospital's challenge to the plaintiffs' expert reports. The Hospital filed an interlocutory appeal from that ruling. On appeal the Hospital, for the first time, asserted it was immune from suit. The court of appeals refused to consider the immunity issue because it had not been presented to the trial court. After addressing the merits of the Hospital's challenge to the expert reports, the court of appeals remanded the case to the trial court for further proceedings.

We conclude that the court of appeals erred by refusing to consider the immunity claim because immunity from suit implicates courts' subject-matter jurisdiction. After considering the immunity claim, which was briefed and argued in this Court, however, we affirm the judgment of the court of appeals remanding the case to the trial court because (1) the pleadings and record neither establish a waiver of the Hospital's immunity nor conclusively negate such a waiver; and (2) the Hospital has not shown conclusively that either the plaintiffs had a full, fair opportunity in the trial court to develop the record as to immunity and amend their pleadings, or that if the case is remanded and the plaintiffs are given such an opportunity they cannot show immunity has been waived.

## I. Background

Travis Black was a psychiatric patient in Rusk State Hospital when he was found unconscious with a plastic bag over his head. Efforts to resuscitate him were unsuccessful and he died. Delbert Van Dusen, M.D., performed an autopsy, determined Travis died of asphyxiation, and concluded that he committed suicide.

Travis's parents, Dennis and Pam Black, filed a health care liability suit against the Hospital and other entities that are not parties to this appeal.[1] The Blacks alleged that the Hospital (1) was negligent by providing or allowing Travis access to a plastic bag that was inherently dangerous in an inpatient psychiatric setting, and the negligence involved a condition, use, or misuse of tangible personal property; (2) was negligent in training and supervising its employees, which resulted in Travis's death either by assisted suicide or murder; and (3) acted with deliberate indifference to Travis's medical and psychiatric needs by depriving him of sleep and refusing to prescribe appropriate medication.

The Blacks timely served the Hospital with an expert report from psychologist Dennis Combs, Ph.D., and a copy of Dr. Van Dusen's autopsy report. *See* TEX. CIV. PRAC. & REM.CODE § 74.351. The Hospital moved for dismissal of the suit on the basis that these reports failed to satisfy the statutory requirements of section 74.351. *See id.* The trial court denied the motion and the Hospital appealed. *See id.* § 51.014(a)(9) (providing that a person may immediately appeal an interlocutory trial court order that denies all or part of the relief sought by a motion under section 74.351(b)).

---

1. The Blacks also sued the State of Texas and the Texas Department of State Health Services. The court of appeals dismissed the claims against the State and the Department. 379 S.W.3d 283, 293. The Blacks do not complain of that action.

On interlocutory appeal the Hospital argued that the trial court erred by denying its motion to dismiss and, for the first time, asserted it had sovereign immunity from suit. Regarding its immunity claim, the Hospital argued that the Blacks' pleadings did not allege a cause of action for which the Hospital's immunity was waived and therefore the Blacks failed to meet their burden of showing the trial court had jurisdiction. 379 S.W.3d 283, 288. The Blacks responded that their filings complied with statutory expert report requirements; the court of appeals could not consider the Hospital's immunity argument because it was neither presented to nor considered by the trial court; and in any event their pleadings were sufficient to demonstrate a claim for which the Hospital's immunity was waived. *Id.* at 288–89.

The court of appeals did not address the immunity issue because "the weight of authority" precluded it from considering the issue on interlocutory appeal when it had not been presented to or ruled on by the trial court. *Id.* at 290. The appeals court, considering both Dr. Combs's report and Dr. Van Dusen's autopsy report as statutory reports, concluded that the Blacks' claims regarding sleep deprivation, failure to prescribe adequate medication, and indifference to Travis's medical needs were not addressed by them, so it dismissed those claims with prejudice. *Id.* at 293. Although the appeals court also concluded that the Blacks' expert reports were deficient with respect to their remaining negligence claims, it determined the reports nonetheless represented a good-faith effort to comply with section 74.351 and remanded for the trial court to consider whether to grant a 30–day extension for the Blacks to cure the deficiencies. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c) (providing that "the court may grant one 30–day extension to the claimant in order to cure the deficiency" if it concludes the claimant's

timely filed expert reports are deficient); *Leland v. Brandal,* 257 S.W.3d 204, 205 (Tex.2008) (holding that "when elements of a timely filed expert report are found deficient, either by the trial court or on appeal, one thirty-day extension to cure the report may be granted" and remanding the case to the trial court for it to consider whether to grant an extension).

The Blacks did not seek review of the court of appeals' decision, but the Hospital did and we granted its petition for review. 54 Tex.Sup.Ct.J. 1156 (June 17, 2011). The Hospital argues that immunity from suit deprives the trial court of subject-matter jurisdiction and the interlocutory appeal statute did not preclude the court of appeals from determining the jurisdictional issue. The Hospital then argues that we should dismiss the case because the Blacks' pleadings, even if true, do not allege a claim for which the Hospital's immunity has been waived by the Tort Claims Act (TCA). *See* TEX. CIV. PRAC. & REM.CODE §§ 101.001–.109.

We begin by addressing our jurisdiction over the interlocutory appeal.

## II. Interlocutory Appeal Jurisdiction

■ Generally, Texas appellate courts have jurisdiction only over final judgments. *Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 352 (Tex.2001). An exception exists for certain interlocutory orders. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a); *Jackson,* 53 S.W.3d at 355. In relevant part, section 51.014(a) provides that

A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

. . .

(8) grants or denies a plea to the jurisdiction by a governmental unit . . . ; [or]

. . .

(9)denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351.

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8), (9). Section 74.351(b), which section 51.014(9) references, specifies that a court must dismiss a health care liability claim if the plaintiff does not timely serve an expert report and the defendant physician or health care provider properly objects. *See id.* § 74.351(b).

When an interlocutory appeal is taken pursuant to section 51.014(a), the court of appeals' judgment ordinarily is conclusive. *See* TEX. GOV'T CODE § 22.225(b)(3). But we may consider an interlocutory appeal when the court of appeals' decision conflicts with the decision of another court of appeals on a material issue of law. *Id.* §§ 22.001(a)(2), (e); 22.225(c). This case presents an issue on which the courts of appeals are in conflict: May an appellate court consider on interlocutory appeal whether a governmental entity has immunity when the trial court did not address the issue first. *Compare* 379 S.W.3d at 290 ("[W]e hold that the weight of authority precludes our consideration on interlocutory appeal of jurisdictional challenges not presented to or ruled on by the trial court."), *with Fort Bend Cnty. Toll Road Auth. v. Olivares,* 316 S.W.3d 114, 118 (Tex.App.-Houston [14th Dist.] 2010, no pet.) ("An appellate court must consider challenges to the trial court's subject-matter jurisdiction on interlocutory appeal, regardless of whether such challenges were presented to or determined by the trial court."). We have jurisdiction to resolve the conflict. TEX. GOV'T CODE § 22.001(a)(2).

## III. Sovereign Immunity

### A. Nature of Immunity

The doctrine of sovereign immunity derives from the common law and has long been part of Texas jurisprudence. *See Hosner v. DeYoung,* 1 Tex. 764, 769 (1847) (holding that the State could not be sued in her own courts absent her consent "and then only in the manner indicated"); *see also City of Dallas v. Albert,* 354 S.W.3d 368, 373 (Tex.2011) ("[The] boundaries [of sovereign immunity] are established by the judiciary, but we have consistently held that waivers of it are the prerogative of the Legislature.").

■ Sovereign immunity in Texas embodies two concepts: immunity from liability and immunity from suit. *Albert,* 354 S.W.3d at 373. Immunity from liability protects governmental entities from judgments, while immunity from suit completely bars actions against those entities unless the Legislature expressly consents to suit. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex.2006); *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006) ("[I]mmunity from suit ... bars suit against [a governmental] entity altogether."); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003) ("Unlike immunity from suit, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction."); *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 857 (Tex.2002) ("We again reaffirm that it is the Legislature's sole province to waive or abrogate sovereign immunity."); *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999) (per curiam).[2]

---

**2.** In this case we address immunity from suit, so references to immunity will be references only to immunity from suit unless specified otherwise.

■ The Legislature has waived governmental entities' immunity from certain claims by means of the Tort Claims Act (TCA). *See* TEX. CIV. PRAC. & REM.CODE §§ 101.001–.109. But the TCA embodies only limited waivers of sovereign immunity; it does not abolish it. *See Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex.1996).

## B. Immunity and Interlocutory Appeals

■ Referencing our decision in *Waco Independent School District v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000), the Hospital argues that immunity from suit is an issue of subject-matter jurisdiction that may be raised for the first time on interlocutory appeal in the same manner as standing and ripeness. Conversely, the Blacks argue that *Gibson* is distinguishable and other cases cited by the Hospital do not support its position because they involved either appeals from final judgments or interlocutory appeals in which the trial court had granted or denied a plea to the jurisdiction.

In *Gibson,* the trial court granted, in part, Waco Independent School District's (WISD) motion to dismiss for want of jurisdiction. 22 S.W.3d at 851. The motion was based on WISD's claim that the Gibsons failed to exhaust their administrative remedies before filing suit. *Id.* The Gibsons filed an interlocutory appeal. *Id.* WISD responded not only by re-urging its argument concerning exhaustion of remedies, but also by challenging the trial court's jurisdiction on standing and ripeness grounds. *See id.* at 851. The court of appeals refused to address WISD's standing and ripeness arguments, reasoning that those issues were not preserved for appeal because WISD had not presented them to the trial court in its motion to dismiss. *Id.* This Court reversed:

[T]he court [of appeals] concluded that standing and ripeness were not properly preserved for its review. We disagree. We decided in [*Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 445 (Tex.1993)] that because subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal.

*Id.*

The Blacks are correct that *Gibson* does not precisely square with the facts and posture of this case. *Gibson* involved an interlocutory appeal from a trial court order granting a plea to the jurisdiction, whereas here no jurisdictional argument was presented to or ruled on by the trial court. *Compare id.* at 851, *with* 379 S.W.3d at 290. The jurisdictional issues in *Gibson* were also different: there the questions concerned standing and ripeness rather than immunity. *See Gibson,* 22 S.W.3d at 851. Further, in *Gibson* the school district pled that the Gibsons' claims were not ripe and that the Gibsons did not have standing. *Id.* But we disagree that these differences dictate a different outcome here.

The court of appeals reasoned that section 51.014(a) precluded it from reviewing an immunity claim that was neither raised nor ruled upon in the trial court. *See* 379 S.W.3d 288. The Hospital argues that this reasoning misapprehends the analysis regarding section 51.014(a) because the statute does not supplant the constitutional requirement that courts must have jurisdiction to adjudicate a dispute. We agree with the Hospital. The inquiry is not whether section 51.014(a) *grants* appellate courts authority to review an immunity claim; rather, it is whether section 51.014(a) *divests* appellate courts of such authority. We conclude that it does not.

■ We have said on numerous occasions that sovereign immunity deprives courts of subject-matter jurisdiction. *See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004); *Jones,* 8 S.W.3d at 638; *see also State v. Lueck,* 290 S.W.3d 876, 880 (Tex.2009) (recognizing that a plea to the jurisdiction properly presents the immunity issue). It has been suggested that while immunity *implicates* subject-matter jurisdiction, it does not necessarily *equate* to a lack of subject-matter jurisdiction. *See Reata,* 197 S.W.3d at 381 ("[S]overeign immunity includes concerns about both subject-matter and personal jurisdiction but is identical to neither.") (Brister, J., concurring). The dissent echoes that theme today. But regardless of whether immunity equates to a lack of subject-matter jurisdiction for all purposes, it implicates a court's subject-matter jurisdiction over pending claims. So if a governmental entity validly asserts that it is immune from a pending claim, any court decision regarding that claim is advisory to the extent it addresses issues other than immunity, and the Texas Constitution does not afford courts jurisdiction to make advisory decisions or issue advisory opinions. *Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821, 822 (Tex.2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *see also* Tex. Const. art. IV, §§ 1, 22 (empowering the attorney general, as part of the executive department of government, to issue advisory opinions to the governor and other officials).

■ Section 51.014(a) expands the jurisdiction of courts of appeals. It specifies circumstances in which a litigant may immediately appeal from an order that would otherwise be unappealable because a final judgment has not been rendered in the matter. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a); *see also Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding) (per curiam) ("Unless there is a statute specifically authorizing an interlocutory appeal, the Texas appellate courts have jurisdiction only over final judgments."). Because section 51.014(a) is a limited exception to the general rule that a party may appeal only from final judgments or orders, it is strictly construed. *See Bally,* 53 S.W.3d at 355. Strictly construing a statute, however, does not call for reading restrictions into it that violate constitutional principles. The court of appeals effectively construed section 51.014(a) to require appellate courts to address the merits of cases without regard to whether the courts have jurisdiction. That construction violates constitutional principles. Tex. Const. art. II, § 1. But section 51.014(a) can be construed in a way so that it does not conflict with the Constitution. *See Stockton v. Offenbach,* 336 S.W.3d 610, 618 (Tex.2011); *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 169 (Tex.2004). *See also* Tex. Gov't Code § 311.021(1) (specifying that the Legislature intends statutes to comply with the Constitution). We hold that if immunity is first asserted on interlocutory appeal, section 51.014(a) does not preclude the appellate court from having to consider the issue at the outset in order to determine whether it has jurisdiction to address the merits. We disapprove of those cases in which courts of appeals have held differently.[3]

---

3. *E.g., Clear Lake City Water Auth. v. Friendswood Dev. Co.,* 256 S.W.3d 735, 747 n. 14 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd); *City of Celina v. Dynavest Joint Ven-*

ture, 253 S.W.3d 399, 404 (Tex.App.-Austin 2008, no pet.); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia,* 244 S.W.3d 455, 461–62 (Tex.App.-Dallas 2007), *aff'd on other*

In addition to the constitutional concerns set out above, we note a practical significance to precluding appellate review of immunity on interlocutory appeal: precluding such review would be inconsistent with the purpose of section 51.014(a). If we agreed with the court of appeals' reasoning—as the Blacks ask us to do and the dissent contends we should do—then on remand the Hospital could assert immunity and file a plea to the jurisdiction. If its plea were denied the Hospital could file another interlocutory appeal. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(8). Such a process would work against the main purpose of the interlocutory appeal statute, which is to increase efficiency of the judicial process. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845 (Tex. 2007).

■ But as we have previously acknowledged, a plaintiff may not have had fair opportunity to address jurisdictional issues by amending its pleadings or developing the record when the jurisdictional issues were not raised in the trial court. *See Gibson*, 22 S.W.3d at 853 (recognizing that safeguards are necessary to protect a plaintiff when an appellate court considers an issue of subject-matter jurisdiction in the first instance because the plaintiff has not had an opportunity to amend its pleadings, but concluding that the Gibsons could not show their claim was ripe even with "every available opportunity to generate record evidence opposing WISD's challenges"). Under such circumstances appellate courts must construe the pleadings in favor of the party asserting jurisdiction, and, if necessary, review the record for evidence supporting jurisdiction. *Tex.*

*Ass'n of Bus.*, 852 S.W.2d at 446. In some instances the pleadings or record may conclusively negate the existence of jurisdiction, in which case the suit should be dismissed. *See Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."). But if the pleadings and record neither demonstrate jurisdiction nor conclusively negate it, then in order to obtain dismissal of the plaintiff's claim, the defendant entity has the burden to show either that the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings; or, if such opportunity was not given, that the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. If the governmental entity meets this burden, then the appellate court should dismiss the plaintiff's case. *See Koseoglu*, 233 S.W.3d at 840 ("[W]e agree that Koseoglu deserves the opportunity to amend his pleadings if the defects can be cured. But Koseoglu's pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect."); *Gibson*, 22 S.W.3d at 853 ("With every available opportunity to generate record evidence opposing WISD's challenges, the Gibsons could not have done so because the evidence required to do so did not exist."). If, however, the governmental entity does not meet this burden, the appellate court should remand the case to the trial court for further proceedings.

grounds, 324 S.W.3d 544 (Tex.2010); *Kinney Cnty. Groundwater Conservation Dist. v. Boulware*, 238 S.W.3d 452, 461 (Tex.App.-San Antonio 2007, no pet.); *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex.App.-Austin 2006, pet. denied); *Brenham Hous.*

*Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687–88 (Tex.App.-Dallas 2003, pet. denied).

*See Westbrook v. Penley,* 231 S.W.3d 389, 395 (Tex.2007) ("If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded an opportunity to replead."); *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 559 (Tex.2002) (remanding a case to the trial court for repleading when the pleadings failed to show jurisdiction but did not affirmatively demonstrate an incurable jurisdictional defect).

### C. Response to the Dissent

The dissent urges that we fully re-examine the basis for our numerous prior statements that immunity deprives courts of subject-matter jurisdiction.[4] What the dissent effectively urges is a change in the nature of immunity in Texas, and in the relationship between the legislative and judicial branches of government regarding management of the public fisc. That is a significant issue, but the parties did not raise it in the courts below or this Court. Addressing it would take us beyond what is necessary to decide this appeal and we decline to do so, except to the extent it is addressed by our opinion and holding.

### IV. The Blacks' Claim

### A. The Tort Claims Act

The court of appeals did not address the Hospital's claim of immunity. Rather than remanding the case to the court of appeals

for it to do so, however, we address the issue in the interest of judicial economy. *See* TEX.R.APP. P. 53.4; *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 855 (Tex. 2011).

As relevant to the Blacks' claim against the Hospital, the TCA provides that a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE § 101.021(2). Section 101.021(2) waives immunity for claims based upon the "use" of tangible personal property only when the governmental unit itself uses the property. *See id.; San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 245–46 (Tex.2004). A governmental unit does not "use" property within the meaning of the TCA when it merely allows someone else to use it. *Cowan,* 128 S.W.3d at 246; *see Dallas Cnty. v. Posey,* 290 S.W.3d 869, 871 (Tex.2009). Immunity is waived for claims based on a "condition" of tangible property if the condition proximately causes personal injury or death. *See* TEX. CIV. PRAC. & REM.CODE § 101.021(2); *Posey,* 290 S.W.3d at 872; *Dallas Cnty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.1998). A condition does not proxi-

---

4. *See Tex. Dep't of Ins. v. Reconveyance Servs., Inc.,* 306 S.W.3d 256, 258 (Tex.2010) (per curiam); *Univ. of Tex. at El Paso v. Herrera,* 322 S.W.3d 192, 202 (Tex.2010); *Lueck,* 290 S.W.3d at 880–81; *Koseoglu,* 233 S.W.3d at 843; *State v. Shumake,* 199 S.W.3d 279, 283 (Tex.2006); *Reata,* 197 S.W.3d at 374; *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004); *Miranda,* 133 S.W.3d at 225–26; *Hoff v. Nueces Cnty.,* 153 S.W.3d 45, 48 (Tex.2004) (per curiam); *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003); *State ex rel. State Dep't of Highways & Pub.* *Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex. 2002); *IT–Davy,* 74 S.W.3d at 855; *Dep't of Transp. v. Garza,* 70 S.W.3d 802, 803 (Tex. 2002); *Travis Cnty. v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 248 (Tex.2002), *superseded on other grounds by statute as recognized in,* Tooke, 197 S.W.3d at 342; *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 866 (Tex.2001); *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 585 (Tex. 2001); *Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale,* 14 S.W.3d 299, 300 (Tex. 2000) (per curiam).

mately cause an injury or death if it does no more than furnish the means to make injury or death possible; that is, immunity is waived only if the condition (1) poses a hazard in the intended and ordinary use of the property and (2) actually causes an injury or death. *See Posey*, 290 S.W.3d at 871, 873; *Bossley*, 968 S.W.2d at 343. The TCA does not waive immunity for claims arising from intentional torts. *See* Tex. Civ. Prac. & Rem.Code § 101.057(2) ("This chapter does not apply to a claim ... arising out of assault, battery, ... or any other intentional tort.").

### B. Was the Hospital's Immunity Waived?

The Hospital contends the Blacks' allegations that it provided or failed to prohibit access to a plastic bag, or that a Hospital employee either murdered Travis or assisted his suicide, do not fit within the TCA's limited waiver of immunity, even if they are true. The Blacks disagree. They emphasize that the Hospital's policy classified the plastic bag as inherently dangerous in an inpatient psychiatric setting. The Blacks argue that their pleadings assert the Hospital was negligent in providing, furnishing, or allowing Travis to access the bag; its negligence involved a use or condition of tangible personal property; and the negligence proximately caused Travis's death. They suggest such pleadings sufficiently allege a claim within the TCA's waiver of immunity. We disagree with the Blacks.

■ Neither providing nor prohibiting access to the bag was a "use." The Blacks' "use" argument erroneously equates providing, furnishing, or allowing access to tangible property with putting or bringing the property into action or service or applying the property to a given purpose. *See Cowan*, 128 S.W.3d at 245–46 (explaining that "use" means "to put or

bring into action or service; to employ for or apply to a given purpose" (citations omitted)). Comparing *Cowan* to the case at bar illustrates this point. *Cowan* involved the death of James Roy Cowan, a psychiatric patient at San Antonio State Hospital. *Id.* at 245. The hospital allowed Cowan access to suspenders and a walker, which Cowan then used in causing his own death. *Id.* We held that the hospital's immunity was not waived by the TCA because the hospital did not "use" the suspenders and walker within the meaning of section 101.021(2) by merely giving them to Cowan. *See id.* at 246 ("[T]he Hospital's immunity can be waived only for its own use of Cowan's walker and suspenders, and not by Cowan's use of them."). Here, the Blacks allege the Hospital allowed Travis access to the plastic bag that was used in causing his death. These allegations do not present a claim for which the Hospital's immunity is waived by the TCA because, as we held in *Cowan*, a hospital does not "use" tangible personal property (*e.g.*, a plastic bag) within the meaning of section 101.021(2) by merely providing, furnishing, or allowing a patient access to it.

■ The Blacks also allege that a "condition" of the plastic bag caused Travis's death. They emphasize the plastic bag was a contraband item and inherently dangerous in the inpatient psychiatric setting. These facts, they argue, bring their claim under the TCA's waiver of immunity pursuant to our decision in *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex. 1976). The Hospital responds that the Blacks' reliance on *Lowe* is misplaced because in that case the property was being put to its intended and ordinary use when a defect in the property caused an injury. The Hospital argues that because the plastic bag was not being put to its ordinary, intended use when it caused Travis's

death, the Hospital's immunity is not waived for a claim based on the alleged condition of the bag. The Hospital is correct.

In *Lowe,* the plaintiff alleged that he injured his knee playing football after the University's football coach ordered him to remove his knee brace and reenter a game without it. *Id.* at 302 (Greenhill, C.J., concurring). The Court concluded that the knee brace was an integral part of Lowe's football uniform and held that the TCA waived the University's immunity because the uniform it gave Lowe was defective due to its lack of a knee brace. *See id.* at 300 (majority opinion). We subsequently limited the precedential value of *Lowe* "to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that lack of this integral component led to the plaintiff's injuries." *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex.1996).

Here, the Blacks argue that the Hospital's act of furnishing Travis with a plastic bag considered inherently dangerous in the inpatient psychiatric setting was analogous to giving him property that lacked an integral safety component. They support this assertion by pointing out that we framed the issue in *Cowan* as "whether merely providing someone with personal property that is *not itself inherently unsafe* is a 'use' within the meaning of the Act." 128 S.W.3d at 245 (emphasis added). But, as the Hospital maintains, the Blacks' argument fails to recognize that the TCA waives immunity for an inherently dangerous condition of tangible personal property only if the condition poses a hazard when the property is put to its intended and ordinary use, which the plastic bag was not. *See Posey,* 290 S.W.3d at 872. In the circumstances of Travis's care at the Hospital, any inherently dangerous aspects of

the plastic bag were at most a means to make his death possible. *Cf. id.* (reasoning that exposed telephone wires did not proximately cause an inmate's death because the exposed wires were no more than a condition of the property that the inmate used to form a ligature to take his life).

The Blacks alternatively urge that the Hospital's negligence resulted in Travis's death by assisted suicide or murder. Their argument focuses on the possibility that a Hospital employee assisted Travis in committing suicide, and they contend that aiding suicide is not an intentional tort within the meaning of section 101.057. *See* TEX. CIV. PRAC. & REM.CODE § 101.057(2) (providing that the TCA does not apply to claims arising out of intentional torts). The Hospital's response is twofold. It first asserts that the TCA waives immunity only for certain torts, and assisted suicide is a crime, not a tort. Second, the Hospital argues that even if assisted suicide falls within the ambit of the TCA, it is more akin to an intentional tort than negligence because it requires an intent to cause injury or death, *see* TEX. PENAL CODE § 22.08(a), and section 101.057(2) specifies that the Hospital's immunity is not waived for such a claim. *See* TEX. CIV. PRAC. & REM.CODE § 101.057(2). We first address the Hospital's second argument because it is dispositive.

A person commits the criminal offense of aiding suicide if "with intent to promote or assist the commission of suicide by another, he aids or attempts to aid the other to commit suicide." TEX. PENAL CODE § 22.08(a). The statute proscribes action taken with the intent that a suicide result. Actions taken with the specific intent to inflict harm are characterized as intentional torts. *See Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985). Thus, assuming, without deciding, that as-

sisting suicide or murder is a tort, it requires actions taken with intent to cause harm and is an intentional tort. The Hospital's immunity as to such a tort is not waived. *See City of Laredo v. Nuno,* 94 S.W.3d 786, 789 (Tex.App.-San Antonio 2002, no pet.) (holding that section 101.057(2) applied to claims against a police officer in part because the officer's conduct was referable to an intentional decision to seize a vehicle illegally).

In sum, even construed in their favor, the Blacks' pleadings do not allege a cause of action within the TCA's waiver of the Hospital's immunity. And the record does not contain any evidence to support jurisdiction.

 The Hospital argues that if we reach this point in our analysis, we should dismiss the Blacks' claims with prejudice because they failed to carry their burden to show the trial court had jurisdiction. *See, e.g., Miranda,* 133 S.W.3d at 226–27; *City of Garland v. Louton,* 691 S.W.2d 603, 605 (Tex.1985). But because the Hospital made its immunity argument for the first time in the court of appeals, the case will be remanded for further proceedings on the jurisdictional issue unless the Hospital shows that one of three situations exist: (1) the Blacks' pleadings or the record conclusively negate jurisdiction; (2) the Blacks had a full and fair opportunity in the trial court to develop the record and amend their pleadings to show jurisdiction yet failed to do so; or (3) if the Blacks did not have such an opportunity, they cannot show jurisdiction even if the case is remanded to the trial court and they are given the opportunity to develop the record as to jurisdiction and amend their pleadings. We next look to see whether the Hospital has conclusively shown one of the above situations.

The Blacks contend that they did not have a fair opportunity in the trial court to develop the record as to jurisdiction. They note that there have been no oral depositions of the parties and they have been unable to explore the basis of statements contained in a report based on the Texas Department of Family and Protective Service's investigation into Travis's death—particularly statements of another Hospital patient who claimed to have seen a Hospital staff member putting a bag over Travis's head.

We agree with the Blacks, in part. The Hospital has not shown conclusively by this record either that they had a full and fair opportunity in the trial court to develop the record as to jurisdiction and amend their pleadings, or that if the case is remanded to the trial court for further proceedings they will be unable to show jurisdiction. Thus, the cause will be remanded to the trial court for further proceedings.

## V. Conclusion

The judgment of the court of appeals is affirmed. The Blacks' claims against the Hospital are remanded to the trial court for further proceedings consistent with this opinion.

Justice HECHT filed a concurring opinion.

Justice LEHRMANN filed a concurring and dissenting opinion, in which Chief Justice JEFFERSON and Justice MEDINA joined.

Justice HECHT, concurring.

We recently wrote that "we, like the U.S. Supreme Court, have recognized that our sometimes intemperate use of the term 'jurisdictional' has caused problems."[1] All we decide in this case is

1. *In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 306 (Tex.2010) (footnote omitted).

whether an appellate court in an interlocutory appeal permitted by statute can decide an issue of governmental immunity from suit outside the scope of the appeal. The Court answers yes and wisely stops there.

Rusk State Hospital appealed from the trial court's denial of its motion to dismiss this health care liability claim for want of an adequate expert report required by the Medical Liability Act ("MLA"),[2] but also argued that its governmental immunity from suit has not been waived by the Texas Tort Claims Act ("TTCA"),[3] ran argument it did not make in the trial court. The statute permitting this interlocutory appeal from the denial of the Hospital's motion to dismiss does not extend to issues of immunity,[4] and the court of appeals, mindful that its jurisdiction over interlocutory appeals is limited to that provided by statute,[5] refused to consider the Hospital's TTCA argument, deciding only that the trial court erred in failing to dismiss some of the claims against the Hospital on its motion to dismiss under the MLA.[6] But immunity from suit implicates subject-matter jurisdiction, as the Court states, and thus "involves a court's power to hear a case",[7] which must be ascertained by every court in every case.[8] A statute authorizing an interlocutory appeal does not empower a court to decide issues in a case over which it lacks subject-matter jurisdiction.

For two reasons, I agree that immunity from suit "sufficiently partakes of the nature of a jurisdictional bar"[9] that it must be considered on interlocutory appeal, even if not raised in the trial court. One is that if immunity is ultimately established, the decision on the merits of the interlocutory appeal will have been advisory at the time it was rendered and therefore outside the court of appeals' jurisdiction.[10] The other reason is practical: an interlocutory appeal is also permitted from a denial of immunity,[11] and it would conserve time and expense to decide the issue in one interlocutory appeal instead of two. Because an appellate court *can* decide an immunity issue beyond the scope of an interlocutory appeal, and there are reasons why it *should*, I agree with the Court that it *must*

2. Tex. Civ. Prac & Rem.Code § 74.351.

3. *Id.* §§ 101.021, 101.025.

4. *Id.* § 51.014(a)(9) (providing that a person may appeal from an interlocutory order that "denies all or part of the relief sought by a motion under Section 74.351(b)").

5. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) ("Unless there is a statute specifically authorizing an interlocutory appeal, the Texas appellate courts have jurisdiction only over final judgments.").

6. 379 S.W.3d 283 (Tex.App.-Tyler 2010).

7. *Tellez v. City of Socorro*, 226 S.W.3d 413, 413 (Tex.2007) (per curiam) (quoting *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)).

8. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex.2004)

("[A] court is *obliged* to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it." (emphasis in original)).

9. *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (referring to Eleventh Amendment immunity).

10. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex.2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions.").

11. Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (providing that a person may appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit"); *see Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex.2007) ("Pleas to the jurisdiction asserting sovereign immunity are the subject of Section 51.014(a)(8).").

do so unless, as in this case, the record has not been sufficiently developed.

But the Court does not equate immunity to a lack of subject-matter jurisdiction. The similarities between the two led us to state in *Texas Department of Transportation v. Jones* that "the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction."[12] But the only issue in that case was whether immunity from suit can be asserted in a plea to the jurisdiction so that the government can immediately appeal an adverse ruling.[13] *Jones* cannot fairly be read to equate immunity from suit with a lack of subject-matter jurisdiction.

There are important differences between immunity from suit and lack of subject-matter jurisdiction.[14] For one thing, the government can waive immunity from suit, either for broad classes of claims or on a case-by-case basis.[15] But it cannot waive subject-matter jurisdiction, for example, by consenting to suit on a claim beyond the court's jurisdiction. For another, while a court is obliged to examine its subject-matter jurisdiction on its own in every case, we have never suggested that a court should raise immunity on its own whenever the government is sued. This case is more typical: not only did the trial court not raise immunity, the government itself did not raise the issue and has no explanation why.

" 'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.' "[16] Not all of them have been, or can be, attributed to immunity from suit. With that understanding, I join in the Court's opinion.

Justice LEHRMANN, joined by Chief Justice JEFFERSON and Justice MEDINA, concurring and dissenting.

Although I concur that this case should be remanded to the trial court, I respectfully dissent, in part, from the Court's judgment. While I agree that subject matter jurisdiction issues such as mootness and ripeness must be considered by an appellate court even if they were not first presented to the trial court, I disagree that sovereign immunity is of the same character. While sovereign immuni-

---

**12.** 8 S.W.3d 636, 638 (Tex.1999) (per curiam).

**13.** 8 S.W.3d at 639. We have since held that a denial of immunity from suit can be immediately appealed regardless of the procedural vehicle used to raise the issue. *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 349 (Tex.2004).

**14.** *See Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 381 (Tex.2006) ("[S]overeign immunity includes concerns about both subject matter and personal jurisdiction, but is identical to neither.") (Brister, J., concurring).

**15.** TEX. CIV. PRAC. & REM.CODE §§ 107.001–.004; *see also Reata*, 197 S.W.3d at 378 (a city's decision to file suit for damages "encompassed a decision to leave its sphere of immunity from suit" for monetary claims against the city that are "germane to, connected with, and properly defensive to" the city's affirmative claims; the city was not immune to monetary claims against it to the extent those claims would offset the city's affirmative claims).

**16.** *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C.Cir.1996)); *see also Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 n. 1 (Tex.2007) ("Of course, 'jurisdiction' has many meanings, and both courts and legislators often use it to mean something other than a court's power to adjudicate a case. Both the United States Supreme Court and this Court have cautioned against assuming 'jurisdiction' means 'subject-matter jurisdiction' due to the stark consequences that accompany the latter term." (citations omitted)).

ty does, as the Court notes, implicate subject matter jurisdiction, it also implicates personal jurisdiction. However, acknowledging that sovereign immunity implicates subject matter jurisdiction does not mean that the harsh rules associated with that label necessarily apply. Because we should look to the jurisdictional rules individually, applying them according to the purpose behind the doctrine of sovereign immunity, I would require governmental entities to raise the issue first in the trial court.

## I. SOVEREIGN IMMUNITY

The Court rests its decision on the notion that sovereign immunity *"implicates* subject matter jurisdiction," but carefully avoids squarely determining that it *is* an issue of subject matter jurisdiction. I write separately to explain why I would hold that it is not, were we to reach the issue.

This Court first recognized sovereign immunity in 1847, holding that "no State can be sued in her own courts without her consent and then only in the manner indicated." *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). The Court has frequently referred to sovereign immunity as jurisdictional. *See, e.g., Anderson, Clayton & Co. v. State ex rel. Allred,* 122 Tex. 530, 62 S.W.2d 107, 110 (1933) (holding that when the State waived immunity by filing suit, the trial court "acquired jurisdiction of the parties and subject-matter"); *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224–26 (Tex.2004). We have often held that sovereign immunity is properly asserted in the trial court by a plea to the jurisdiction. *See, e.g., Miranda,* 133 S.W.3d at 225–26; *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999) (per curiam).

Although we have consistently referred to sovereign immunity as jurisdictional, we

have not clearly defined that term. Subject matter jurisdiction and personal jurisdiction are jurisdictional; a court cannot render judgment without both. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). Subject matter jurisdiction involves a court's power to hear and resolve the legal and factual issues of a class of cases. *Middleton v. Murff,* 689 S.W.2d 212, 213 (Tex.1985) (per curiam) (citing *Deen v. Kirk,* 508 S.W.2d 70, 72 (Tex.1974)). Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 379 (Tex. 2006) (Brister, J., concurring) (citing *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 358 (Tex.2004)); *see also Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 850 (Tex.2000). In contrast, personal jurisdiction involves a court's power to bind a particular party. *CSR Ltd.,* 925 S.W.2d at 594. Unlike subject matter jurisdiction, personal jurisdiction can be voluntarily waived by an appearance. *Reata,* 197 S.W.3d at 379 (Brister, J., concurring) (citing *Hilburn v. Jennings,* 698 S.W.2d 99, 100 (Tex.1985)).

In the last decade, we have sometimes referred to sovereign immunity as a matter of subject matter jurisdiction, beginning with a per curiam opinion in *Texas Department of Transportation v. Jones,* 8 S.W.3d at 639 (holding that the court of appeals had to determine whether the driver's pleadings in a suit for damages stated a claim under the Texas Tort Claims Act before affirming the trial court's denial of the Department of Transportation's plea to the jurisdiction); *see also, e.g., Univ. of Tex. at El Paso v. Herrera,* 322 S.W.3d 192, 202 (Tex.2010); *Reata,* 197 S.W.3d at 374; *Miranda,* 133 S.W.3d at 225–26. However, these cases did not involve a governmental unit at-

tempting to raise sovereign immunity for the first time on interlocutory appeal; instead, in every case the governmental unit had raised the issue of sovereign immunity to the trial court. *See Herrera*, 322 S.W.3d at 193; *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258 (Tex.2010) (per curiam); *State v. Lueck*, 290 S.W.3d 876, 879 (Tex.2009); *State v. Shumake*, 199 S.W.3d 279, 282 (Tex.2006); *Hoff v. Nueces Cnty.*, 153 S.W.3d 45, 47 (Tex.2004) (per curiam); *Reata*, 197 S.W.3d at 373; *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 637 (Tex.2004); *Miranda*, 133 S.W.3d at 221–22; *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 541 (Tex.2003); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 325 (Tex.2002); *Travis Cnty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 247 (Tex.2002); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 851 (Tex.2002); *Tex. Dep't of Transp. v. Garza*, 70 S.W.3d 802, 804 (Tex.2002); *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 586 (Tex.2001); *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 866 (Tex.2001); *Jones*, 8 S.W.3d at 637. Moreover, in none of these cases has the Court analyzed the legal issues involved in holding that sovereign immunity is an issue of subject matter jurisdiction.

## A. Sovereign Immunity Implicates Aspects of Both Subject Matter Jurisdiction and Personal Jurisdiction

Characterizing an issue as subject matter jurisdiction has profound consequences. Therefore, we should be cautious when we apply that label and should not default to using it in circumstances when it is not clear that the issue is solely one of subject matter jurisdiction. I would hold that, because sovereign immunity implicates aspects of both personal jurisdiction and subject matter jurisdiction, but is

identical to neither, the rules associated with subject matter jurisdiction do not apply generally. Rather, jurisdictional rules apply individually, according to the purposes underlying the doctrine of sovereign immunity. *Reata*, 197 S.W.3d at 382 (Brister, J., concurring).

Although some of our recent cases have, with no analysis, referred to sovereign immunity as an issue of subject matter jurisdiction, sovereign immunity implicates elements of both personal jurisdiction and subject matter jurisdiction, and has always had its own set of jurisdictional rules. In the earliest Texas cases, sovereign immunity was addressed in terms of amenability to suit, a term borrowed from personal jurisdiction. *Reata*, 197 S.W.3d at 380 & n. 16 (Brister, J., concurring) (" '[I]t is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent....' " (quoting *Bd. of Land Comm'rs v. Walling*, Dallam 524 (Tex.1843))). These cases were not anomalies, as sovereign immunity has been traditionally considered a problem of personal jurisdiction. In his *Commentaries on the Laws of England*, Blackstone concluded that sovereign immunity arose from the nature of the sovereign party, not the subject matter of the case:

> Hence, it is, that no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him. For all jurisdiction implies superiority of power: authority to try would be vain and idle, without an authority to redress; and the sentence of a court would be contemptible, unless that court had power to command the execution of it: but, who ... shall command the king?

1 WILLIAM BLACKSTONE, COMMENTARIES *242. The Founders also referred to sovereign immunity in terms of personal jurisdiction. *See* Caleb Nelson, *Sovereign Immunity as*

*a Doctrine of Personal Jurisdiction,* 115 HARV. L.REV. 1559, 1565–66 (2002) (explaining that the Founders believed sovereign immunity was more relevant to personal jurisdiction than subject matter jurisdiction). In addressing the question of state sovereign authority, Alexander Hamilton borrowed the language of personal jurisdiction when he wrote in the Federalist Papers, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.*" THE FEDERALIST No. 81 (Alexander Hamilton); *see also, e.g., Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex.1985) (per curiam) (listing the defendant being "amenable to the jurisdiction of the court" as one of the elements of personal jurisdiction).

As I have noted, sovereign immunity implicates elements of both subject matter jurisdiction and personal jurisdiction. While the decision whether to compensate particular claimants may raise separation of powers concerns, implicating policy issues beyond the traditional realm of judicial proceedings, *see Tex. Parks & Wildlife Dep't v. Sawyer Trust,* 354 S.W.3d 384, 401 (Tex.2011) (Hecht, J., concurring in part and dissenting in part), and invoking subject matter jurisdiction issues, these considerations also arise from the fact that the State is the party being sued. While it is true that the judiciary is not the proper branch of government to decide how the State should spend its money, the authority to render judgment that obliges parties to pay is not related to whether the party can or should pay. The sovereign immunity doctrine flows from the fact that the State is the party at risk—an issue more closely aligned with personal jurisdiction. At its core, there is something incongruous about saying that traditional contract and tort suits are beyond the subject matter of the judiciary simply because one party is a governmental entity. *See* Scott Dodson,

*Mandatory Rules,* 61 STAN. L.REV. 1, 20 (2008) ("The primary function of state sovereign immunity—granting a state the right not to be subject to a lawsuit at the insistence of an individual—speaks to a right of a particular party, not to a limitation on the court's power to hear the case."). A suit against the State is beyond the judicial cognizance of the courts because of the State's role as a party, not because of the subject matter of the suit. Despite sometimes referring to sovereign immunity as an issue of subject matter jurisdiction, we have also held that the State no longer had immunity because it filed an affirmative claim for relief. *Reata,* 197 S.W.3d at 377 (holding that the City of Dallas's decision to file suit "encompassed a decision to leave its sphere of immunity" for related claims); *see also Kinnear v. Tex. Comm'n on Human Rights,* 14 S.W.3d 299, 300 (Tex.2000) (per curiam) (holding that the trial court had jurisdiction over claims against the State in a case where the State had filed suit); *IT–Davy,* 74 S.W.3d at 861 (Hecht, J., concurring) ("[T]he State can waive immunity by filing suit."). These decisions are inconsistent with the absolute nature of subject matter jurisdiction, which cannot be waived and can be raised at any time. *See Gibson,* 22 S.W.3d at 850 ("[S]ubject matter jurisdiction challenges cannot be waived, and may be raised for the first time on appeal."); Scott Dodson, *Hybridizing Jurisdiction,* 99 CALIF. L.REV. 1439, 1473 (2011) (noting that sovereign immunity lacks some features of subject matter jurisdiction). The ability of states to waive immunity or consent to suit is an important feature which is inconsistent with the characterization of sovereign immunity as an issue of subject matter jurisdiction:

> The state legislature may wish to waive immunity in an entire class of cases, such as discrimination cases. Or, the

state may wish to consent to a particular lawsuit from which it would otherwise be immune. Public pressure or individualized considerations of fairness and justice may motivate a state's decision to waive or consent. On the other hand, equally important concerns for the state fisc might justify a decision not to waive immunity or consent to suit. In short, the [non-subject matter jurisdiction] characteristics of waiver and consent provide an opportunity for the states to strike a balance between the legitimate concerns of suing a state and the need for redress of injuries caused by the state. The importance of the ability to waive immunity or consent to suit supports a [non-subject matter jurisdictional] characterization.

Dodson, *Mandatory Rules, supra*, at 23 (citations omitted). It is clear that "sovereign immunity is difficult—perhaps impossible—to characterize as [subject matter jurisdiction] because it can be waived or consented to." Dodson, *Hybridizing Jurisdiction, supra*, at 1483.

Similarly, in federal courts, sovereign immunity is not synonymous with subject matter jurisdiction. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (holding that the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction"); Katherine Florey, *Insufficiently Jurisdictional: The Case Against Treating State Sovereign Immunity as an Article III Doctrine*, 92 CALIF. L.REV. 1375, 1399 (2004) ("[S]tate sovereign immunity and [subject matter] jurisdictional requirements are more different than alike."). Federal courts have recognized that states may waive their sovereign immunity, revealing an inconsistency with subject matter jurisdiction, which cannot be created by waiver or consent. *See Commodity*

*Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (explaining that parties cannot confer subject matter jurisdiction beyond the limitations imposed by Article III by consent (citing *United States v. Griffin*, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938))); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (noting that a State may waive its immunity and consent to suit in federal court); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 786 (5th Cir. 2012) (noting that parties cannot create subject matter jurisdiction by consent or waiver (citing *Buchner v. FDIC*, 981 F.2d 816, 818 (5th Cir.1993))); *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir.2011) ("Litigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent."); *Meyers ex rel. Benzing v. Tex.*, 410 F.3d 236, 255 (5th Cir.2005) ("[W]hen Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court." (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002))); Nelson, *supra*, at 1610 ("In deriving its doctrine of sovereign immunity, the [Supreme] Court has therefore mixed together two very different sorts of ideas; it has blended concepts drawn from the law of personal jurisdiction with concepts drawn from the law of subject matter jurisdiction."). One scholar summed up the difficulties inherent in federal courts treating sovereign immunity as a subject matter jurisdiction issue:

[S]overeign immunity doctrine contains elements that are inconsistent with regarding it as a limit on subject matter jurisdiction. While parties cannot ordinarily create a basis for federal jurisdiction by consenting to litigate in federal

court, a state may waive sovereign immunity both explicitly and by its conduct during litigation. A court *may* raise an Eleventh Amendment issue *sua sponte;* by contrast, it *must* address Article III matters, such as standing or an absence of federal question jurisdiction, as soon as they come to its attention. Congress may, when acting pursuant to its Fourteenth Amendment authority, abrogate state sovereign immunity; it has no corresponding power with respect to any other Article III doctrine. Finally, state sovereign immunity, unlike any other Article III question, is subject to a broad and important exception: under the doctrine of *Ex parte Young,* a suit for prospective injunctive relief against a state official is not considered a suit against the state and may be pursued in federal court.

Florey, *supra,* at 1379–80 (citations omitted). The ability of states to waive sovereign immunity or consent to suit is inconsistent with the characterization of sovereign immunity as a subject matter jurisdiction issue under both federal and Texas case law.

Additionally, in many states, sovereign immunity is not considered an element of subject matter jurisdiction. *See, e.g., Sea Hawk Seafoods, Inc. v. State,* 215 P.3d 333, 339 (Alaska 2009) (describing state sovereign immunity as an affirmative defense "that does not affect a court's subject-matter jurisdiction"); *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894, 898 (1994) ("[W]e overrule the antiquated rule that sovereign immunity is a jurisdictional bar and, accordingly, cannot be waived. We join those jurisdictions which hold that sovereign immunity is an affirmative defense that must be pled." (citations omitted)). Indeed, some states have held that sovereign immunity is an issue of personal jurisdiction rather than an issue of subject matter jurisdiction. *See, e.g., German v.*

*Wis. Dep't of Transp., Div. of State Patrol,* 235 Wis.2d 576, 612 N.W.2d 50, 55 (2000) ("If sovereign immunity is properly raised, then the court is without personal jurisdiction over the state."); *Data Gen. Corp. v. Cnty. of Durham,* 143 N.C.App. 97, 545 S.E.2d 243, 246 (2001) ("[S]overeign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction. . . ."). Sovereign immunity is far from universally considered a subject matter jurisdiction issue.

Given that sovereign immunity implicates aspects of both subject matter and personal jurisdiction, it becomes apparent that its jurisdictional rules cannot be derived simply by labeling sovereign immunity subject matter or personal jurisdiction. Accordingly, it is time to recognize that "sovereign immunity has always had its own set of jurisdictional rules because jurisdiction over private and public parties is simply different." *Reata,* 197 S.W.3d at 379 (Brister, J., concurring).

## B. The Implications of Treating Sovereign Immunity as a Subject Matter Jurisdiction Issue

A decision that sovereign immunity presents a question of subject matter jurisdiction would have profound implications. Since subject matter jurisdiction " 'cannot be conferred upon any court by consent or waiver,' a judgment [against a governmental actor] will never be considered final if the court lacked subject-matter jurisdiction." *Dubai Petrol. Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000) (quoting *Fed. Underwriters Exch. v. Pugh,* 141 Tex. 539, 174 S.W.2d 598, 600 (1943)). In *Wisconsin Department of Corrections v. Schacht,* Justice Kennedy noted problems with allowing States to belatedly assert sovereign immunity:

[W]e allow States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

524 U.S. 381, 394, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring). Even a losing plaintiff would be able to avoid the entire judgment by asserting the State's sovereign immunity on appeal. If sovereign immunity deprives the courts of subject matter jurisdiction, governmental entities could attack years-old judgments by asserting sovereign immunity because without subject matter jurisdiction, the judgments would be void. Due to the dramatic effects and perpetual uncertainty caused by characterizing an issue as one of subject matter jurisdiction, this Court in *Dubai* noted that "the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e (1982) (internal quotation marks omitted)).

## II. ASSERTING SOVEREIGN IMMUNITY ON INTERLOCUTORY APPEAL

Generally, appellate jurisdiction exists only in cases where a court has rendered a final judgment disposing of all issues and parties. *See* TEX. CIV. PRAC. & REM.CODE § 51.012. The Legislature provided a narrow exception for interlocutory appeals in section 51.014, which allows them under certain circumstances, including when the trial court denies a plea to the jurisdiction by a governmental entity. *See id.* § 51.014(a)(8); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex.2001) (noting "the Legislature's intent that sec-

tion 51.014 be strictly construed"). Our courts of appeals have repeatedly held that sovereign immunity should be raised in the trial court, and that issues not presented to the trial court on a plea to the jurisdiction may not be raised in an interlocutory appeal. *See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 171 (Tex.App.-Austin 2010, pet. filed) (mem. op.); *Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 141 (Tex.App.-Austin 2009, pet. filed) (mem. op.); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 256 S.W.3d 735, 747 n. 14 (Tex. App.-Houston [14th Dist.] 2008, pet. dism'd); *City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 404 (Tex.App.-Austin 2008, no pet.); *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 244 S.W.3d 455, 461–62 (Tex.App.-Dallas 2007), *aff'd on other grounds*, 324 S.W.3d 544 (Tex.2010); *Kinney Cnty. Groundwater Conservation Dist. v. Boulware*, 238 S.W.3d 452, 461 (Tex.App.-San Antonio 2007, no pet.); *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex.App.-Austin 2006, pet. denied); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex. App.-Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687–88 (Tex.App.-Dallas 2003, pet. denied). *But see Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 95 (Tex.App.-Houston [14th Dist.] 2010, no pet.).

Looking to the purposes behind the doctrine of sovereign immunity for guidance, I agree with those courts of appeals that have held that an immunity defense may not be raised for the first time on appeal. First, immunity from suit protects the government from the expense involved in defending lawsuits. *Reata*, 197 S.W.3d at 382 (Brister, J., concurring). Requiring the government to raise the issue of sovereign immunity in the trial court reduces

such expense by avoiding ongoing, unnecessary litigation early in the process. Because sovereign immunity's modern rationale is the protection of the public fisc, it should be asserted as early as possible. *See Tooke v. City of Mexia,* 197 S.W.3d 325, 331–32 (Tex.2006) (stating that an important purpose of sovereign immunity is "to shield the public from the costs and consequences of improvident actions of their governments"); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 695 (Tex. 2003) (noting that states have retained immunity to "protect the public treasury"). The purpose of protecting the public fisc is ill-served by allowing immunity to be raised post-judgment, possibly even years after litigation has ended. *See* Dodson, *Mandatory Rules, supra,* at 24 (noting that a governmental actor "has little to gain by asserting immunity only late in the proceedings"). Taxpayers are penalized when the State is not required to bring the matter up early to get the case dismissed before money is expended defending the lawsuit. When attorneys for the State fail to raise sovereign immunity in the trial court, that failure might not be based on oversight. The State's attorneys often make tactical decisions in deciding which issues they choose to raise. By not requiring the State to raise the issue of sovereign immunity in the trial court, the Court is providing it with a strategic advantage that other parties lack. Moreover, such a lenient rule penalizes taxpayers by dissuading conscientious attorneys for the State from developing procedures to ensure that the matter is raised timely (in order to avoid subsequent liability), resulting in unnecessary and costly litigation. Second, the doctrine should not result in "one law for the sovereign and another for the subject," as such a rule would look "less like sovereign immunity than sovereign inequity." *Reata,* 197 S.W.3d at 383 (Brister, J., concurring). Whether the failure to assert immunity in the trial court is intentional or not, no other party is excused from raising an issue due to inadvertence; the State should not be treated differently. For these reasons, I would hold that governmental entities may not raise sovereign immunity for the first time on appeal.

### III. Conclusion

I concur in the Court's judgment remanding the case to the trial court, but for the reason set forth by the court of appeals—so that the trial court may consider granting the Blacks a thirty-day extension to cure the deficiencies in their reports—rather than for the reasons expressed by this Court today. Any issues dealing with sovereign immunity should be raised at that time in the trial court. I disagree that the government is entitled to raise the issue for the first time on appeal.